No. 31,237

OTIS LINDENSTRUTH and EVA LINDENSTRUTH, *Appellants*, v.
F. J. LEVEQUE, *Appellee.*

(23 P. 2d 486.)

Opinion filed July 8, 1933.

*Charles Stephens, C. E. Rumery* and *C. R. Stauffacher,* all of Columbus, for the appellants; *Tom Winter,* of Girard, of counsel.

*E. W. Patterson* and *B. W. Weir,* both of Pittsburg, for the appellee; *Chester Stevens,* of Independence, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: The plaintiffs, Otis Lindenstruth and Eva Lindenstruth, brought this action against F. J. Leveque, to recover damages for the death of their son, Glenn, alleged to have been caused by the negligence of the defendant. The defendant prevailed, and the plaintiffs appeal.

Glenn Lindenstruth was about eight years of age, and the accident which resulted in his death occurred on the outskirts of Neodesha. A man named Anderson was driving a team attached to a farm wagon along a graveled street. The wagon had a floor made of two-inch planks with four-inch planks on the sides of the wagon. The wagon had a coupling pole three inches by three inches, which protruded six or seven feet back of the floor of the wagon. The team was being driven on a walk along the street, and as it passed a store Glenn and another boy, Clarence Kammerer, came out and mounted the projecting coupling pole and rode along a short distance, when Clarence got off the wagon. Glenn rode farther, holding to the hind end of the wagon bed, and when he was near the Lindenstruth

home another boy called "Glenn," whereupon Glenn jumped off the coupling pole and ran across the street behind the wagon. The farm wagon he left was going north on the east side of the traveled street, and at this time the defendant, F. J. Leveque, was driving an automobile going in the opposite direction on the west side of the street at a speed of about thirty miles per hour. The graveled portion of the street at this point was about twenty-five feet wide. When Glenn was going over to the west side of the street he was struck about two feet west of the center of the road by the defendant's car. Defendant's automobile was equipped with four-wheel brakes, and the marks in the gravel showed that the brakes were applied about eight feet north of where the boy lay after the accident. With a general verdict in favor of the plaintiffs, the jury returned the following special findings of fact:

"1. Was Glenn Lindenstruth, on the 27th day of August, 1929, a bright, intelligent boy, of the age of eight years, and more than ordinary intelligence? A. No.

"2. Was the injury and death of Glenn Lindenstruth the result of an accident as defined to you in the court's instructions? A. Yes.

"3. Did Glenn Lindenstruth at the time he went into the highway at the point where he was struck by defendant's automobile have judgment and intelligence enough to appreciate the danger of coming in contact with a moving automobile of the kind and character there operated by the defendant? A. Yes.

"4. At the instant that Glenn Lindenstruth went into the road in front of defendant's car, how many feet away was defendant's automobile? A. Fourteen feet.

"5. At what rate in miles per hour was defendant driving his automobile at the time Glenn Lindenstruth went into the road in front of defendant's car? A. Thirty miles per hour.

"6. How many feet did defendant's automobile go after striking Glenn Lindenstruth before it was stopped? A. Twenty-seven feet.

"7. After Glenn Lindenstruth appeared in front of defendant's car did defendant have sufficient time to avoid striking him? A. Yes.

"8. If you should answer the last question 'yes,' then state why defendant failed to avoid striking him. A. Lack of presence of mind.

"9. Was the defendant driving upon the west side of the road as he passed the Anderson team and wagon? A. Yes.

"10. If you find the defendant guilty of negligence causing the death of Glenn Lindenstruth, state the act or acts of negligence of which the defendant was guilty. A. No warning of horn. Too close to center of road."

Motions were made by defendant to set aside certain answers to special questions, also one for judgment for defendant, notwith-

standing the general verdict. The motions were argued and taken under advisement, with the request for written briefs on the questions of law involved. These were filed and later the court overruled the motion to set aside the special findings but sustained the defendant's motion for judgment notwithstanding the general verdict. The general verdict was set aside and judgment was rendered for defendant upon the special findings, and this appeal followed.

Plaintiffs contend that the court erred in giving judgment for defendant on the special findings and discusses at length the evidence which they say tended to show that defendant was driving too near the middle of the road and should have avoided the boy when he ran out from the back of the wagon. According to the findings defendant's automobile was only fourteen feet away when the boy came into view in the path of defendant. Defendant was driving at a speed of thirty miles per hour, and there is nothing to show that the defendant knew of the presence of the boy on the farm wagon or that he was about to leave it until he trotted in front of the track of the automobile. An automobile with four-wheel brakes traveling at that speed was going forty-four feet per second and, according to approved computations, could be stopped in a distance of forty-five feet. The distance traveled by the defendant's car to the point where the boy was struck being only fourteen feet, it is evident that the defendant had only a small fraction of a second to stop his car and avoid striking him. Defendant promptly applied his brakes, and the wheel marks in the street showed that a stop was made in twenty-seven feet from the point of collision. There was no lack of diligence in the effort of defendant to stop his car. On the contrary it shows promptness and care and a very quick stop.

It is argued that the defendant was driving his car close to the center of the road, and that he might have avoided the collision. He was driving on the right side, which was on the west side of the street, and was not negligent because he was driving nearer the center than the outside or west side of the road. (*Giles v. Ternes,* 93 Kan. 140, 143 Pac. 491.) Defendant did not know that the boy was on the wagon or likely to run out from behind it until he came in the path of the automobile, which was only fourteen feet away, and the defendant then applied his brakes in an effort to save him. There was only a split second of time, a tick of a clock, to avoid a collision, and we fail to see what more the defendant could have

done to avoid striking the boy than was done by him. It is clear there was nothing approaching negligence in the defendant's action or omission in his endeavor to avert the lamentable tragedy. Neither do we see any negligence in failing to sound a horn when meeting and passing the approaching wagon. The accident occurred in daylight. The automobile was traveling on the right side of the road as was the wagon, and nothing in the law or the rules of the road requires the useless blowing of the horn in meeting a coming vehicle, each on its own side of the road, where there is no congestion of traffic nor any pedestrian in sight.

In *Crutchley v. Bruce*, 214 Ia. 731, a defendant driving an automobile on the proper side of the road approached a milk truck standing on the proper side of the road and partly off of the pavement on the proper side of the road, with a driver of the truck standing beside it, when a boy eight years old, hidden from view among milk cans in the truck, emerged suddenly and stepped in front of the oncoming automobile. The driver of the automobile did not sound a horn as he approached, of which complaint was made, and it was said:

"There was not the slightest thing. to indicate to the driver of the automobile in any way that a boy was among the milk cans on the rear portion of the truck or near there, and that he might suddenly dash into the path of appellant's automobile. A driver could not reasonably be expected, under such circumstances, to anticipate that a person might so appear suddenly in his path, and hence be required to give a signal of his approach." (p. 736.)

See, also, *Zinn v. Updegraff*, 113 Kan. 25, 213 Pac. 816; *Bishard v. Engelbeck*, 180 Ia. 1132; *Sullivan v. Smith*, 123 Md. 546.

Finding number two of the jury was that under the instructions the injury and death of the boy was the result of an accident, and a reading of the record shows that it was, in fact, an unavoidable accident so far as the defendant was concerned. Whether the jury meant that it was a mere happening and not one that was inevitable and could not be avoided, the findings, together with the evidence, show that it was one that defendant could not have foreseen and avoided by the exercise of ordinary care. The jury found that it was an accident as defined in the court's instructions. The instructions of the court were not brought up on the appeal and we must assume that the term was properly defined by the court.

We are asked to examine the evidence in construing the findings of the jury. This has been done, and a reading of the evidence

satisfies us that the defendant was not negligent nor responsible for the injury and death of the boy. The findings of fact control the general verdict (*Jones v. Interurban Railway Co.*, 92 Kan. 809, 141 Pac. 999), and the only grounds of negligence attributed to the defendant manifestly do not constitute negligence, and under the findings and evidence we are compelled to hold that the district court rightly set aside the general verdict and gave judgment for defendant.

The judgment is affirmed.