No. 34,054

WASKEY ELWOOD WALLS, an Infant,· by MAY WALLS, His Next Friend, *Appellee*, v. THE CONSOLIDATED GAS UTILITIES CORPORATION et al., *Appellants*.

(84 P. 2d 881)

Opinion filed December 10, 1938.

*Arnold C. Todd, Ralph Gore* and *Kurt Riesen,* all of Wichita, for the appellants.

*James B. Nash,* of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This action was one brought by an eight-year-old boy, by his mother as his next friend, against a corporation which owned a truck, and the man who drove the truck, to recover from both of them $10,000 for injuries to the boy by reason of the right front fender or bumper of the defendants' truck striking the boy, which collision broke his right leg and otherwise scratched and bruised him, from which he had practically recovered at the time of the trial except that the leg that had been injured was shorter and he was somewhat nervous.

The accident occurred on January 23, 1937, in Wichita, about four o'clock in the afternoon, on Second street between St. Francis and Emporia avenues. The defendants' truck was going west on Second street and stopped at the east edge of the intersection with St. Francis avenue for the signal "Go," and it was the first car to go after the signal changed for that purpose. There was nothing ahead of this truck on the street. The visibility was good. The sun was shining, and the accident happened about forty feet beyond the intersection of the alley, which would make it· about 280 feet from the east edge of the St. Francis intersection. A good deal of snow had fallen a few days before, and the city had scraped the ice and

snow on Second street to a pile in the center thereof, which was about three feet wide and eighteen inches high. Second street was forty feet wide, and there was diagonal parking space on the north which occupied approximately twelve feet, and a horizontal parking space on the south side thereof which occupied about seven feet. This left two narrow driving spaces, one on either side of the snow bank in the center. The space from the parked cars on the south to the center of the street or center of the snow bank would be about thirteen feet. The streets were icy in spots and some other spots were wet from melted snow.

The defendant Tucker, driving the truck in a westerly direction, testified that he did not see the boy until he was within about ten feet of him and that the boy at that time was in front of another truck going east, that as soon as he saw the boy he put on his brakes and turned to the left into the snow bank. The boy had about crossed the snow bank when the right bumper or fender struck him. The truck stopped with the front wheels in the snow bank in the center of the street and headed almost directly south. Three other witnesses saw the accident and described it fully, and the driver of the car going east saw the boy crossing the street just in front of his car.

The parents of the boy and others were witnesses and testified about the boy and his mental and physical condition and about his being sent that day to the bakery for bread with two boys who had evidently crossed the street before he did.

Several witnesses testified that the truck was going about fifteen or twenty miles per hour before the driver saw the boy. There were no chains on the truck. The city ordinance limited the speed on the streets to thirty miles per hour and not at any time a greater rate than is reasonable, safe and proper with due regard to the use, condition and occupancy of the street.

At the close of the evidence offered by the plaintiff the defendants filed a demurrer thereto, which was overruled by the trial court, and then the defendants introduced the evidence of one witness, Robert H. Tucker, the driver of the truck. The court gave instructions and submitted special questions to the jury. The jury rendered a verdict in favor of the plaintiff for $1,500 and answered the questions. The defendants then filed a motion to vacate and set aside the answers to questions 3, 5, 7, 8 and 10, also presented a motion for judgment in favor of the defendants notwithstanding the general verdict

and also a motion for a new trial. These motions were all.overruled and judgment was rendered for the plaintiff, from which the defendants have appealed.

Appellants argue the errors assigned under four different headings or concerning four different points involved. The first is that the demurrer to the evidence of the plaintiff should have been sustained because there was no actionable negligence shown and because that which was relied upon by the plaintiff necessarily required the jury to resort to speculation in order to arrive at such a finding. The second point is that the demurrer to the evidence should have been sustained because the evidence showed the plaintiff to have been guilty of contributory negligence which caused the accident. The third point is that there was error in the failure of the trial court to set aside answers to certain questions, in failing to render judgment in favor of defendants on the answers notwithstanding the general verdict, and in the failure to sustain the motion for new trial for the reason that the answers to certain questions are inconsistent with answers to other questions and with the general verdict. The fourth and last point is that the trial court erred in giving instruction No. 21, because there was no substantial evidence for the jury to consider in carrying out the provisions of such instruction.

The special questions and answers thereto were as follows:

"1. Immediately prior to the accident in question, was plaintiff an intelligent and normal child for his age? A. Yes.

"2. Did plaintiff immediately prior to the accident understand and appreciate that he was likely to be injured in crossing the street unless he was careful in avoiding moving vehicles? A. Yes.

"3. Did plaintiff take the ordinary precautions for his own safety that a reasonable, normal child of his age, understanding and intelligence would have taken under the circumstances? A. Yes.

"4. Did plaintiff run out from behind parked cars at a place other than the regular crosswalk in attempting to cross the street? A. Yes.

"5. Was plaintiff guilty of any act of negligence or carelessness that proximately contributed to his injury? A. No.

"6. Did the defendant Tucker in the position he found himself to be immediately before the accident use the care and caution that an ordinary person would have used under the same circumstances? A. Yes.

"7. Was the defendant Tucker guilty of any act or acts of negligence that proximately caused the accident? A. Yes.

"8. If you answer the foregoing question in the affirmative, and only in that event, state specifically the nature of such act or acts of negligence. A. We believe in view of condition of street at the time of the accident the truck should have been driving more slowly and should have been equipped with chains.

"9. How fast was defendant Tucker driving his truck just prior to the accident? A. Fifteen to twenty miles per hour.

"10. How far was defendants' truck from plaintiff at the time defendant, Tucker, was first able to see plaintiff crossing the street? A. Approximately 100 feet."

We shall consider the first and third points together. In the first point the appellants complain that the negligence claimed by the plaintiff to have been proved was not attempted to be established by facts, but only by circumstances. It was held in *Canestro v. Joplin-Pittsburg Rld. Co.*, 135 Kan. 337, 10 P. 2d 902:

"The rule is well established by this court that negligence may be proven by circumstantial evidence, but the circumstances must be of such a nature and so related to each other that it is the only conclusion that can reasonably be drawn from them. A fact is not proven by circumstances which are merely consistent with its existence." (p. 340.)

In *Hendren v. Snyder*, 143 Kan. 34, 53 P. 2d 472, it was held:

"In an action for damages for personal injuries sustained in an automobile casualty, a judgment for plaintiff predicated upon mere conjecture as to defendant's negligence cannot be permitted to stand." (Syl.)

Appellants cite *Cornwell v. O'Connor*, 134 Kan. 269, 5 P. 2d 861; *Crowe v. Moore*, 144 Kan. 794, 62 P. 2d 846; *Lindenstruth v. Leveque*, 138 Kan. 93, 23 P. 2d 486, and many other automobile negligence cases along the same line, and in some of which the demurrer to the evidence was sustained because the proof of negligence was based upon circumstances instead of facts.

Our attention is directed particularly to the answers to special questions Nos. 8 and 10. All the evidence we can find as to the answer to question No. 8 as to its being negligence for the truck not to be equipped with chains is the fact that it was not so equipped, and the further fact that it was in January and the street was icy in spots and that there was some snow, ice and water in the street. Are these facts and the circumstances drawn from them of such a nature and so related that negligence is the only conclusion that can reasonably be drawn from them? Must all kinds of trucks, in January, where the streets are icy in spots and there is some ice, snow and water in the streets, be equipped with chains? Surely a truck driver or automobile man would know better than others as to when it was best or necessary to use chains. There are evidently some times and circumstances under which it is not necessary or helpful to equip with chains. The fact that many or most people nowadays know something about the use of automobiles does not

dispense with the necessity of opinion testimony. Appellee cites, together with other references and decisions from other states, the following text, 42 C. J. 897:

"It has been held that, where the conditions are such that an ordinarily prudent person would use chains on the wheels of his automobile, a failure to do so constitutes negligence, but there is also authority for the view that it is not negligent to drive at a reasonable rate of speed and with reasonable care, without chains, on an icy and slippery street. A car which is equipped with skid chains may, under some circumstances, require less care in approaching a street crossing or a pedestrian than it would require if it did not have chains."

As to question No. 10 there is even less evidence—in fact, none that has been pointed out to us. Appellee refers to the clear, unobstructed view and visibility for the distance of 280 feet, and if the question were, how far the defendant could have seen a boy that day crossing a street, perhaps the 280 feet would have been evidence on the subject from which the jury could have given its answer for that or a shorter distance. But that was not the question asked. It was how far Tucker was able to see the boy crossing the street. The only evidence was the 280 feet of unobstructed view and that he did see ten feet away. The jury must have done some speculating to have reached this answer. Were these and other answers given by the jury inconsistent with each other and with the general verdict?

The answers to questions Nos. 3 and 4 are apparently inconsistent with each other and with the general verdict. Taking ordinary precautions for one's own safety and running "out from behind parked cars at a place other than the regular crosswalk in attempting to cross the street" are not in harmony, and the answer to No. 4 is apparently inconsistent with the general verdict.

The answer to question No. 7 found the driver of the truck guilty of negligence which proximately caused the accident, while the answer to question No. 6 said the truck driver in the position he found himself to be immediately before the accident used the care and caution that an ordinary person would have used under the same circumstances. What more is one required to do than to use the care and caution that an ordinary person would use under the same circumstances? Plaintiff lays special stress on the word "immediately" in question No. 6 and applies the question and answer to the period of time after the truck driver saw the boy ten feet away, but falls back to the answer to question 10 by not looking or

seeing the boy 100 feet away from the place of the accident. We have spoken of the lack of evidence to support the answer to question No. 10 and will further say that such failure to keep a lookout and see the boy crossing the street sooner is not one of the two points of negligence found by the jury in answer to question No. 8 and therefore cannot be considered as such and a proximate cause of the accident. We regard the answer to question No. 6 as inconsistent with the general verdict. The following decisions were made in cases under similar circumstances:

"When in a case involving the alleged negligence of the employer in providing proper oil, numerous findings of fact are returned by the jury, some of which show negligence and others proper care, the latter being not only inconsistent with the former but with the general verdict, a new trial should be granted." (*Anders v. Railway Co.,* 91 Kan. 378, syl. ¶ 5, 137 Pac. 966.)

"Where special findings of the jury are in conflict with the general verdict, inconsistent with each other, and part of them are contrary to the evidence in the case, the verdict should be set aside and a new trial ordered." (*Hauck v. Mercantile Co.,* 99 Kan. 790, syl., 163 Pac. 457.) (See, also, *Anderson v. Pierce,* 62 Kan. 756, 64 Pac. 633; *Healer v. Inkman,* 89 Kan. 398, 131 Pac. 611; and *Whitacre v. State Bank,* 140 Kan. 106, 34 P. 2d 569.)

We have no hesitancy in concluding that the answers to some of these questions are inconsistent with each other and with the general verdict and that the answers to the questions should generally prevail over the general verdict, yet the inconsistency of the answers among themselves prevents the rendering of a judgment upon them in favor of the defendant notwithstanding the general verdict. So since the verdict cannot stand as against the inconsistent answers, the motion for a new trial should be sustained.

The fourth point with reference to the giving of instruction No. 21 we would not need to mention except for the fact that the case may be again tried, and for that reason we simply state that we think it gave the jury unusual power in the absence of opinion or expert evidence.

The judgment is reversed and the cause is remanded with directions to grant a new trial. It is so ordered.