CHRIS M. DIEHM, SPECIAL ADMINISTRATOR, APPELLEE, v. FRANK X. DARGACZEWSKI ET AL., APPELLANTS.

280 N. W. 898

FILED JULY 8, 1938. No. 30382.

*Seymour L. Smith, Harold C. Linahan, W. W. Wenstrand, Louis T. Carnazzo* and *William P. Lynch,* for appellants.

*Brogan, Ellick, Shoemaker & Fitzgerald* and *R. B. Hamer, contra.*

Heard before ROSE, EBERLY, DAY, PAINE and MESSMORE, JJ., and KROGER, District Judge.

PAINE, J.

This is an action at law against the city of Omaha, hereinafter called the city, and Frank X. Dargaczewski, a truck driver, to recover for the alleged wrongful death of plaintiff's intestate, Leonard Diehm, by being run over by a city truck. The plaintiff, Chris M. Diehm, was the father of the deceased, and brought the action as special administrator. The jury returned a verdict for $2,250 against both of the defendants. Separate motions for new trial were overruled. Each defendant gave bond and appealed from the judgment entered upon said verdict, and each has filed a brief.

The accident which resulted in the death of Leonard Diehm, a 12-year-old boy, occurred about the middle of the afternoon of August 20, 1936. It was a clear, bright day. The deceased, in company with two brothers, Santa and Tony Mandolfo, who were 15 and 12 years old, respectively, started to a public market to do errands for their respective parents. They took with them a boy's coaster wagon, equipped with rubber tires, in which there was an empty sack. Santa was pulling the wagon as they crossed the Eleventh street viaduct, which runs north and south in Omaha across the railroad tracks, about a block west of the depots of both the Union Pacific and Burlington railroads. This viaduct is 32 feet wide, with a sidewalk on each side about six feet wide, leaving a 20-foot roadway for two lines of automobile traffic in the center. The sidewalks are raised about six inches above the level of the roadway. The three boys with their wagon started north over the viaduct on the east sidewalk, Leonard on the west side of the wagon next to the roadway, and Tony behind the wagon, and at one place they broke into a dogtrot, and continued over the viaduct, when Leonard slipped, or fell, out onto the roadway just in front of a city truck being driven north by Dargaczewski across the viaduct.

Dargaczewski had seen the three boys going along the raised sidewalk on the east side of the viaduct for some 300 feet, and at no time had any one of them stepped down into the traffic lane, or given the slightest intimation that he intended to do so, nor did he see any reason for blowing his horn.

Six witnesses testified who actually saw the accident: The defendant truck driver and his helper, John A. Leahy, who was riding in the front seat with him, and two entirely disinterested witnesses, Mathew McGrath and C. E. Munson, who were driving motor vehicles in the southbound lane of traffic across the viaduct, and were immediately adjacent thereto at the time of the accident, and, in addition, there were the two brothers, Tony and Santa Mandolfo. Tony Mandolfo testified that he lives at 804 Forest avenue, which is next door to the home of the plaintiff; that he was in the 8A grade in school; that he and his brother Santa started with Leonard Diehm to the market, and had the coaster wagon, and came onto Eleventh street at Pierce street, and went north; that near an electric light post located in the sidewalk on the east side of the viaduct he saw Leonard fall, and testified at the trial that the truck was about 30 feet south of the pole; that Leonard's body was lying east and west, his head being to the east, about 1½ to 2 feet out from the edge of the sidewalk. It appears that Tony was at the scene of the accident on Sunday before the trial, with his brother Santa, his father, the plaintiff, and the plaintiff's attorney, going over the facts involved. It appears in the evidence on cross-examination that Tony had given a statement down at the police headquarters on the same day immediately after the accident, in which he described the accident as he remembered it at that time. The statement was taken down in writing and signed by him over 14 months before the trial, and the question was asked him at that time, "How far from you was the truck at the time you first saw it?" and his answer then was, "About five feet, or ten feet."

Santa Mandolfo testified at the trial that at the time of

the accident he was pulling the coaster wagon and running, and that he was facing north, the direction in which he was going, and, not hearing the two boys running behind, he stopped and looked around when he was about ten feet north of the light post, and the truck was already on top of Leonard. On cross-examination he admitted that he also had given a written statement at the police station about 45 minutes after the accident; admitted it was his signature signed to exhibit No. 2, a portion of which was received in evidence, and reads as follows: "Q. Tell just what you know about this accident. A. I was running on the east side of the viaduct on the sidewalk, pulling a coaster wagon, and Leonard Diehm, the boy that got hurt, was running along the sidewalk, right alongside the wagon, on the west side of the wagon. His foot slipped off the curbing and he rolled right into the street under front wheels of the truck. Q. Did you see the truck before it ran over the boy? A. Just as I seen the boy fall off the curb, I seen the truck and the boy was under the wheels."

The defendant truck driver testified that he had gradually overtaken the boys and had reduced his speed to about seven miles an hour, and the testimony of others indicates that suddenly, without any warning whatever, Leonard fell into the driveway, his body lying crosswise of the roadway, with his head about two feet off the sidewalk, and as he was about four feet tall his feet reached some six feet out into the northbound traffic lane. The driver of the truck had his two helpers with him, one sitting on the seat with him and one in the back part of the truck. The driver snapped on his brakes as hard as they would go, and testifies that he does not believe the truck went two feet after he put the brakes on.

Helper Leahy, sitting in the seat with the driver, testified that they had slowed down before they got near the boys, and that one of them either fell or tripped off the sidewalk, and that the truck was within three or four feet of him when he fell into the roadway, and when the truck stopped the front wheel had come to rest on the boy's stomach.

At the time of this accident there was traffic proceeding in the opposite direction on the westerly ten feet of this roadway, and two of the drivers in this other line of traffic were in a position to see exactly what happened, and appear to have been entirely impartial witnesses. Mathew McGrath testified that he was driving south on the viaduct at the time of the accident. He had seen the three boys and the truck which he was just about to pass, and one boy just flopped right out under the truck. Q. 702: "How far did he fall in front of the truck? how far was the truck from the boy when he fell out in the street? A. I should judge two or three feet." He said he knew an accident was inevitable and looked away.

C. E. Munson, who was driving a truck, was also in the southbound lane of traffic. He noticed the boys and the city truck, and testified that just as the city truck got even with the boys one of them seemed to dive off the sidewalk about four feet in front of the truck, and when the truck stopped it was on the boy; that it did not travel over four feet. Neither of these independent witnesses was personally acquainted with the driver of the truck.

With this brief statement of the facts, we will consider the errors. Only a few of the 16 errors relied upon by the city and the 12 errors relied upon by Dargaczewski for reversal will be set out. It is charged that the court erred in overruling motions for a dismissal or for a directed verdict on the ground that plaintiff's evidence failed to show any negligence on the part of either defendant; that the sole and proximate cause of the accident was the carelessness and negligence of plaintiff's decedent.

The fourth error relied upon for reversal is in giving court's instruction No. 2, which reads in part as follows: "Defendant city of Omaha, for answer to the petition of plaintiff, denies that at the time of the accident the said truck was being used in the service of defendant city." Counsel for city insist that this was a prejudicial misstatement of the city's position, for the city in the third paragraph of its answer alleges: "This answering defend-

ant expressly denies that the truck referred to in plaintiff's petition was, at the time in question, being used for the repairing and maintenance of the streets, alleys and public ways in said city, * * * or for the purpose of aiding and assisting defendant city in the discharge of its duties to maintain the streets and public ways of said city, as alleged in plaintiff's petition. In this connection, defendant city alleges that at all times complained of in the plaintiff's petition, *it was using the automobile truck in question in the exercise and performance of a governmental function* in that said truck was being used exclusively by the department of police, sanitation and public safety."

This instruction No. 2 was clearly a misstatement of the answer of the city, and we do not see that it is corrected or modified in any other instruction, but the jury are further instructed in No. 7, given by the court, as follows: "You are instructed that it is established by the evidence that the truck in question at the time of the accident complained of, was owned by the city of Omaha and was being used in the service of the city of Omaha in its *corporate capacity,* by the defendant Dargaczewski, an employee of the defendant city of Omaha."

This, in connection with instruction No. 2, told the jury in effect that, although the city denies that the truck was being used in its service at the time of the accident, yet the court tells them in No. 7, in effect, that the evidence proves it was being used by the city in its "corporate capacity," rather than in performing a governmental function.

"When, in consequence of a misstatement of the pleadings, an instruction has a tendency to confuse or mislead the jury, it is good ground for a new trial." *Howell and Gibson v. Sewing Machine Co.,* 12 Neb. 177, 10 N. W. 700.

The truck in the case at bar was kept in the metropolitan police garage. It was at all times under the control of Captain Payne, of the police department, who was in charge of traffic. Under his direction, the defendant truck driver and his two assistants had been using the truck all

day on the day of the accident in painting lanes to guide the children from the school building the nearest way to cross the streets, and they were returning the truck to the police garage to be stored. The painting of these lines on the streets, denoting the lanes for the school children and other pedestrians to use in crossing the streets, was a work done solely in the interest of public safety, and in lieu of the police direction of the traffic at such crosswalks. Such painting was not done to preserve or maintain the streets, but rather the lanes were painted to take the place of a traffic policeman. *City and County of Denver v. Forster*, 89 Colo. 246, 1 Pac. (2d) 922; *Auslander v. City of St. Louis*, 332 Mo. 145, 56 S. W. (2d) 778.

However, in the case at bar, this court does not decide the question whether the trial court was in error in instructing the jury that the truck was being used by the city in its corporate capacity. *Levin v. City of Omaha*, 102 Neb. 328, 167 N. W. 214.

In instruction No. 6 the court used this language in the first sentence: "The only acts of negligence charged against the defendants to which you will give consideration are," etc., and then gave two acts: First, that the driver failed to give any warning of the approach of the truck; second, failed to bring the truck to a stop when he knew that deceased was in a position of peril. This instruction would not have been subject to the objections made if the court had said that these two acts of negligence are alleged by the plaintiff or in plaintiff's petition, but in the form used by the court it is argued that it implied to the jury, not that these acts of negligence were charged by the plaintiff, but that the court itself was asking the jury to give consideration to these two acts of negligence.

Instruction No. 11 stated generally that greater care must be exercised for the safety of children in close proximity to the highway, and that the driver of a truck is presumed to know that children act impulsively and heedlessly, without the slightest warning of their intention. Instructions similar to this have been frequently given

where children of tender age were playing in, or crossing, the highway, intent upon some game. We are cited to *Brown v. Wade,* 145 So. (La. App.) 790, in which case a verdict of $2,500 was affirmed for the death of a little girl, aged three years and ten months, who was seen by a motorist 75 feet away running toward the road, when he was driving a Buick car at 35 to 40 miles an hour. It was held that the motorist, seeing the small child running toward the road on a rural highway, has no right to assume that a child of such tender years will exercise discretion to protect itself from the danger of rapidly-moving automobiles.

However, in the case at bar, the facts were different from cases where this instruction has been used. Leonard Diehm was 12 years of age; he had sold and carried newspapers and magazines, he had been employed to pass handbills for grocery stores and drugstores, and had done some caddying. He had experience and knowledge of the danger of crossing streets carrying automobile traffic. He had been sent on an errand to the store, and was not engaged in carefree play, but suddenly fell directly in front of the truck. It is a question whether the giving of instruction No. 11 was justified.

In *De Griselles v. Gans,* 116 Neb. 835, 219 N. W. 235, when a nine-year-old boy ran out into an alley, chasing an automobile tire, and was fatally injured by a truck, a verdict for $5,000 was reversed, in an opinion written by Judge Redick, on the ground that the evidence was insufficient to support a verdict for plaintiff.

In *Troup v. Porter,* 126 Neb. 93, 252 N. W. 611, where the decedent suddenly stepped in front of the defendant's car, it was held that the court was justified in entering judgment for defendant.

We will now consider the doctrine of last clear chance, which is argued extensively in the briefs in the case at bar. The plaintiff contends that this doctrine was applicable, while the defendants insist that it was not applicable. The evidence shows that the plaintiff's intestate, by tripping and falling immediately in front of the city truck, had

placed himself in a position of peril, from which he could not extricate himself.

The doctrine is usually presented, as in the very complete annotation in 92 A. L. R. 47, under several situations: First, when the danger is actually discovered by defendant and the other person is unable to escape; second, when the other person is physically able to escape; and, third, when the danger is not discovered by defendant, but ought to have been discovered by him.

In Restatement, Torts, 1253, sec. 479, it is stated that, if one is incapable of averting harm to himself, he may still recover if the defendant knows of the plaintiff's situation, realizes the peril involved therein, and is thereafter negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff.

In *Lindenstruth v. Leveque*, 138 Kan. 93, 23 Pac. (2d) 486, an eight-year-old boy jumped from a wagon and ran across the street, 14 feet in front of a motorist traveling 30 miles an hour. The defendant had only a fraction of a second to stop his car, and it was held that there was no lack of diligence on his part.

In *Webster v. Luckow*, 219 Ia. 1048, 258 N. W. 685, a ten-year-old boy was with a group of children on a country road, going home from school. The group of children divided, and a motorist approached to go between the groups of children at about 15 miles an hour, when suddenly this little boy started to cross from one side of the road to the other and was killed. The verdict returned was reversed, and a new trial ordered.

In *Donahue v. Massachusetts Northeastern Street R. Co.*, 222 Mass. 233, 110 N. E. 281, a ten-year-old boy's hat blew off and he ran to pick it up directly in front of a street car, and was struck while stooping to pick it up. No gong was sounded or whistle blown. The car was running at the rate of 20 miles an hour. It was held that there was no negligence upon the part of the defendant company, and the direction of the verdict for defendant was clearly right.

We cannot take time to discuss the many other cases cited in the briefs filed in this case. This court has held that the doctrine of last clear chance applies when, subsequent to the negligence of the plaintiff, there is negligence of the defendant which is the proximate cause of the injury (*Parsons v. Berry,* 130 Neb. 264, 264 N. W. 742), and that when a person is in a place of danger, one who knows of it must use every precaution to avoid injuring him. *Nielsen v. Yellow Cab & Baggage Co.,* 130 Neb. 457, 265 N. W. 420. Other Nebraska cases are discussed in 15 Neb. Law Bulletin, 173.

It has often been said that this doctrine does not apply where the party charged is required to act instantaneously. *O'Malley v. Eagan,* 43 Wyo. 233, 2 Pac. (2d) 1063, 77 A. L. R. 582.

The preponderance of the evidence in the case at bar indicates that this unfortunate boy accidentally fell from the sidewalk into the roadway within three to five feet of the defendant's truck, and that the defendant was not negligent, but was so attentive to his driving, and put on the brakes so vigorously, that he stopped the truck just as the front wheel had reached the lad. We cannot see, under the law and the proved facts in this case, how the doctrine of last clear chance applies. Before the doctrine of last clear chance can apply, the defendant must have had a chance to avoid the collision, for the doctrine presupposes time for action. 5 Am. Jur. 778, sec. 490.

For the prejudicial errors set out herein, the judgments entered herein are set aside and the case remanded for a new trial.

REVERSED.