CYRUS C. ROBY, APPELLEE, v. HOBART M. AUKER,
APPELLANT.

32 N. W. 2d 491

Filed May 20, 1948.   No. 32294.

*George W. Leamer* and *H. E. Siman,* for appellant.

*Mark J. Ryan,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and LANDIS, District Judge.

CHAPPELL, J.

This is an action to recover for damages resulting from an automobile collision. Plaintiff was awarded a jury verdict and judgment thereon. Defendant's motion for new trial was overruled, and he appealed to this court, assigning that the trial court erred: (1) In refusing to sustain defendant's motion for directed verdict; (2) in sustaining plaintiff's motion to withdraw from the jury defendant's counterclaim pleaded in his cross-petition; (3) in giving instructions Nos. 5 and 12 respectively; and (4) that the verdict and judgment thereon were not sustained by the evidence but were contrary to law and the evidence. We sustain the second, third, and fourth assignments.

The evidence adduced for plaintiff was substantially as follows: At a little after 8 a. m. of a foggy morning in February, when visibility was limited from 300 to 500 feet, plaintiff was driving his car west on the right side of a straight, level, icy, 20 or 22 foot-wide pavement. Some cars on the highway had lights on and some, including plaintiff, did not. Plaintiff saw two cars approaching from the west on the south side of the highway. Defendant was seen by plaintiff 400 to 500 feet away, with his lights on, suddenly turning out from behind the other cars in an attempt to pass them, at a high rate of speed, to-wit 40 to 45 miles an hour, "maybe less." Upon seeing defendant, plaintiff did not put on his brakes and attempt to stop, because he was afraid of skidding on the icy pavement, but took his foot off the accelerator, threw out the clutch, and coasted his car on to the west but toward the ditch on the right side of the pavement, at a speed of 28 to 30 miles an hour. A witness for plaintiff testified that the brakes could have been safely, if moderately, applied, and that it was not a measure of safety for plaintiff to disengage the clutch. To plaintiff, defendant appeared to have slammed on his brakes and lost control of his car, which then traveled across the pavement to the north, then

south, thence back north on an angle, where the left front of defendant's car collided with the left side of plaintiff's car, at a point where the right wheels of plaintiff's car were four feet four inches north of the pavement, on the shoulder thereof.

After the impact, plaintiff's car was headed south in the ditch north of the pavement with the rear bumper against the fence north of the ditch 30 or 40 feet from the point of impact. Defendant's car was headed south, with the front end over and off the south side of the pavement on the shoulder and the rear end still on the pavement.

Plaintiff testified that sometime after the accident defendant said "he was to blame, it was all his fault" and the sheriff testified for plaintiff that defendant said he was "in a hurry" and if plaintiff "had gone in the ditch he wouldn't have hit him." However, defendant testified that he never made any such statements.

The evidence adduced for defendant was substantially as follows: That at the time of the accident it was cold but not freezing, and the pavement was wet but not icy. A car ahead of defendant was traveling slowly, 25 to 30 miles an hour, and having followed it for about a quarter of a mile, defendant decided to pass the car. He started to turn out, looked, and seeing no car approaching, speeded up to perhaps 40 miles an hour. He then saw plaintiff's car about 300 feet away. At that time the right side of defendant's car was about in the center of the highway, and being unable to safely turn back into the south lane, he put on the brakes and tried to stop, but his car skidded first to the north, then south, and thence traveled straight east, where plaintiff's car, which came straight on down the pavement without deviation, collided with the left front fender of defendant's car. Thereafter, plaintiff's car traveled northwest for approximately 40 feet from the point of impact and defendant's car traveled southeast for approximately 20 feet from the point of impact. There they

both stopped substantially in the positions heretofore described. Defendant testified that at the time of the accident there was approximately three-quarters of the width of a car between the left side of his car and the north side of the pavement, plus six and one-half feet of readily traversable shoulder north thereof. Photographs of the pavement and shoulder at the point of collision were offered by defendant and received in evidence.

Bearing in mind the foregoing evidence, we turn to the assignments of error. In this jurisdiction, a motion for directed verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and such party is entitled to have every controverted fact resolved in his favor and have the benefit of every inference that can reasonably be deduced from the facts in evidence. Hammond v. Morris, 147 Neb. 600, 24 N. W. 2d 633; Halliday v. Raymond, 147 Neb. 179, 22 N. W. 2d 614.

We call attention also to the fact that when a plaintiff moves to dismiss, or for a directed verdict, or to withdraw from the jury a consideration of defendant's claim upon a cross-petition in a negligence case, such defendant has a right to rely upon and have the benefit of any evidence of plaintiff's negligence which may appear in the evidence adduced by plaintiff in his own behalf. Meyer v. Platte Valley Construction Co., 147 Neb. 860, 25 N. W. 2d 412.

What is reasonable care must in each case be determined by its own peculiar facts and circumstances, Lammers v. Carstensen, 109 Neb. 475, 191 N. W. 670, and negligence is essentially relative and comparative, depending on the surrounding facts and circumstances, McClelland v. Interstate Transit Lines, 142 Neb. 439, 6 N. W. 2d 384.

Where different minds may reasonably draw different

conclusions from the evidence adduced, or if there is a conflict in the evidence as to whether or not they establish negligence or contributory negligence and the degree thereof when one is compared with the other, such issues must be submitted to the jury. Thomison v. Buehler, 147 Neb. 811, 25 N. W. 2d 391.

It is only where the evidence is undisputed or but one reasonable conclusion can be drawn from the evidence, that the question is of law for the court. Hamblen v. Steckley, 148 Neb. 283, 27 N. W. 2d 178. In other words, if there is any competent evidence before the jury by which a finding in favor of the party on whom rests the burden of proof can be upheld, the court is not at liberty to disregard it and direct a verdict against him. Bainter v. Appel, 124 Neb. 40, 245 N. W. 16.

In the light of the foregoing rules and the evidence heretofore set forth, we conclude that the trial court did not err in refusing to sustain defendant's motion for a directed verdict.

On the other hand, upon like premises, we conclude that the trial court did err in sustaining plaintiff's motion to dismiss defendant's cross-petition and in withdrawing his counterclaim from consideration of the jury by giving instruction No. 5. The effect of the instruction was to tell the jury as a matter of law that defendant was guilty of more than slight negligence, which was a question for the jury to decide.

In that connection, defendant's alleged violation of section 39-7,110, R. S. 1943, in overtaking and passing another motor vehicle proceeding in the same direction, was not negligence as a matter of law but only evidence of negligence, and whether or not such alleged violation of a statute constituted negligence under the circumstances was a question for the jury under proper instructions. Herman v. Firestine, 146 Neb. 730, 21 N. W. 2d 444; Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041.

In any event, defendant in his cross-petition, as if

he were plaintiff and plaintiff were defendant, pleaded facts equivalent to the doctrine of the last clear chance. Plaintiff's answer thereto, together with the evidence adduced, not only by defendant but by plaintiff as well, of which defendant was entitled to have· the benefit, made that doctrine an issue for the jury.· The applicable rule is that the trial court must submit to and instruct the jury upon all material issues raised by the pleadings and supported by the evidence, Franks v. Jirdon, 146 Neb. 585, 20 N. W. 2d 597, whether requested to do so or not, Tenborg v. Dillie, 132 Neb. 203, 271 N. W. 689.

This court has held that: "Although a person may have negligently exposed himself or his property to an injury, nevertheless, if the defendant, after discovering his exposed situation, negligently injures him or is guilty of negligence in not discovering his dangerous position in time to avoid the injury, and injury results because thereof, he may still recover." Carnes v. De-Klotz, 137 Neb. 787, 291 N. W. 490.

In Kruger v. Omaha & C. B. Street Ry. Co., 80 Neb. 490, 114 N. W. 571, 127 Am. S. R. 786, 17 L. R. A. N. S. 101, it was said: "The doctrine of the 'last clear chance' simply means that, notwithstanding the previous negligence of the plaintiff, if at the time the injury was done it might have been avoided by the exercise of reasonable care on the part of the defendant, the defendant will be liable for the failure to exercise such care."

In Loudy v. Union P. R. R. Co., 146 Neb. 676, 21 N. W. 2d 431, it was held: "To recover under the doctrine of the last clear chance, a plaintiff must have been in a position of peril which was known or, by the exercise of ordinary care, ought to have been known to defendant in time to avoid injury by the exercise of ordinary care."

It has also been said that: "Before the doctrine of last clear chance can apply, the defendant must have had a chance to have avoided the collision, for the doctrine presupposes time for action." Diehm v. Darg-

aczewski, 135 Neb. 251, 280 N. W. 898; Moses v. Mitchell, 139 Neb. 606, 298 N. W. 338. There is competent evidence in the record before us from which the jury could have found that plaintiff did have time and opportunity to have avoided the collision by the exercise of ordinary care.

It is also the rule that: "The doctrine of the last clear chance is not applicable where the negligence of the party seeking to invoke it is active and continuous as a contributing factor up to the time of injury, but its applicability is not avoided by the mere continuing existence of the consequences or peril resulting from prior but completed conduct." Folken v. Petersen, 140 Neb. 800, 1 N. W. 2d 916. We conclude that whether or not defendant was entitled to the benefit of the doctrine was, under the circumstances, a question for the jury, which should have been submitted to it for determination.

Instruction No. 12 gave plaintiff the benefit of the sudden emergency rule. Defendant contends that the instruction was prejudicially erroneous, and we sustain that contention.

Emergency is commonly defined as: "An unforeseen combination of circumstances which calls for immediate action." Webster's New International Dictionary, 2d ed., Unabridged.

In the realm of negligence cases, an emergency has become the basis for a rule of law which is dependent for application upon two factual elements.

This court has held that: "Where one driving an automobile is suddenly confronted by an emergency, requiring instant decision, he is not necessarily guilty of negligence in pursuing a course which mature reflection or deliberate judgment might prove to be wrong." Belik v. Warsocki, 126 Neb. 560, 253 N. W. 689.

However, the above rule cannot be successfully invoked by either party in a negligence case unless there is competent evidence to support a conclusion that a

sudden emergency actually existed, and then it cannot be successfully invoked by one who has brought that emergency upon himself by his own acts or who has not used due care to avoid it. Hughes v. Omaha & C. B. Street Ry. Co., 143 Neb. 47, 8 N. W. 2d 509.

While it appears that plaintiff pleaded facts justifying the admission of evidence upon the issue of sudden emergency, obviously under the evidence adduced as heretofore set forth, plaintiff was not confronted by a sudden emergency requiring instant decision. As a matter of fact, after observing defendant suddenly come from behind the cars 400 to 500 feet away, more than a city block, plaintiff, according to his own evidence, had plenty of time to and did exercise mature reflection and deliberate judgment. However, whether or not he was guilty of negligence in the exercise thereof under the circumstances was a question for the jury to decide.

For the reasons heretofore stated, the judgment should be and is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

PAINE, J., dissenting.

I respectfully dissent from the opinion adopted, reversing and remanding the case.

This case is somewhat close and I desire to make clear certain points in the evidence.

This action grew out of a head-on collision of two automobiles, both of which were damaged. The jury returned a verdict for plaintiff for $1,183, and defendant appealed.

. The accident occurred about as follows: The plaintiff, Cyrus C. Roby, with his wife, was driving west on Highway No. 20, a paved road, 20 feet wide, in his Dodge coupé, on February 4, 1946, at a little after eight o'clock in the morning. His speed was 28 to 30 miles an hour. At the time it was very foggy, and some cars were using lights, others were not. The road was slippery in places from being wet, and was icy in other places.

The defendant, Hobart M. Auker, a farmer, 50 years

of age, was driving east to Sioux City in his Ford V-8, and testified that there was at that time considerable traffic on the road, both of cars and trucks. Some had their lights on, as he did. He followed Howard Carter's car for about one-fourth of a mile. As it was going only 25 to 30 miles an hour he decided to pass it, and stepped on his accelerator; "I gave it all it would take to pick up my speed to pass him." He had looked to see if the road was clear ahead. The road was level. He could not see anyone coming, and was alongside the Carter car when he first saw the plaintiff about 300 feet ahead of him. Defendant put on his brakes as hard as he dared to, and tried to stop, but his car skidded first to the right, then to the left, and was headed straight east when the cars collided, both being on the north side of the center line of the road. When it was over, the plaintiff's car was over in the fence to the northwest, 40 feet from the place of the accident, with his rear bumper in the fence. Defendant said his car slid over to the south side and stayed, with the rear wheels on the pavement, about 20 feet from the place of the accident.

Defendant said the shoulder, or apron, was about six and a half feet wide, with a very gentle dip to the ditch, which was about three feet deep.

The plaintiff testified that he first saw defendant's car when it whipped out from behind the Carter car at a terrific rate of speed, 400 or 500 feet away. "Now when Auker came out behind this car how was his car performing? A It looked to me like he was headed right straight north and then he came back and when he came back the second time he hit me. Q In other words it indicated to you that his car was out of control or partially out of control, is that it? A That's right. Q And upon seeing this *Carter* (Auker) car in this position, what did you do? A Well, I told the Mrs., I says look at that crazy devil come, hang on, I am taking the ditch, and I took my foot off the accelerator and

threw out the clutch. I didn't want my power to hit his power."

Plaintiff testified that he had gotten so his right wheels were four feet four inches off the pavement at the time of the collision, and his coupé was thrown to the north side, with the back bumper in the wire fence over across the ditch, and defendant's car was off the road on the south side. The plaintiff's car had its left front wheel knocked off, the bumper off, the hood mashed, left front door mashed, the running board on left side entirely off, and the frame and front axle were sprung. Plaintiff's car was worth $1,200 before the accident. It cost $410 to repair it, and took two months to get repairs. After it was repaired it was only worth $600, and he had not yet gotten the new front door or running board. He testified that his business at the time was buying stock with which to go on a farm, and it cost $5 a day to hire a car to make these trips. Dr. Larsen removed eight pieces of glass from plaintiff's eye, and later took out another piece. Plaintiff's back bothered him all summer. He testified that defendant came to see him afterwards and said it was all his fault, that he was to blame for the accident, and "it was lucky we wasn't all killed." The defendant denied making these statements.

Sheriff Goodsell testified that he got out to the place of the accident about 9 o'clock that morning. He saw the fresh tracks where the plaintiff's car had been driven out on the shoulder or just kept skidding. The sheriff testified that defendant Auker answered his questions, and told him this: "He said he was trying to pass a fellow and he was in a hurry and had some stock in the stockyards and wanted to get down at the stockyards by the time it was sold." However, the defendant denied making this statement to the sheriff.

There was a stipulation as to the testimony that Dr. A. A. Larsen would give if he were called and sworn as a witness; that he would testify to removing glass from

plaintiff's eye, that plaintiff's left shoulder and left knee were bruised, "and, further, that Mrs. Roby had bruises on both arms, hematoma of the left arm and of the left shoulder, and large bruises on the right shoulder, and a puncture wound of the right leg one-half inch deep; * * * *"

At the close of plaintiff's evidence defendant moved for a directed verdict for the reason that plaintiff failed to prove the allegations of his petition; that by plaintiff's admissions and the testimony of his own witnesses it was shown that he was guilty of more than slight negligence in that he did not exercise care by applying his brakes, in disengaging his clutch, which was negligence, and that the speed of plaintiff's car was not reduced at the time of the accident; and that the contributory negligence of plaintiff bars him from recovery. This motion was overruled by the court.

The defendant testified that he had to pay $172.75 for the repairs on his car, which included the tow-in charge of $10, and it was stipulated that that amount was the fair and reasonable value of the repairs. The defendant called no other witness, and rested after his own testimony had been given, which included introduction of four pictures he had taken some days after the accident.

One section of our statute is in part as follows: "No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction." § 39-7,110, R. S. 1943.

The defendant admitted that he attempted to pass an automobile going in the same direction. The left side of the road was not free of oncoming cars, and when defendant saw that plaintiff's car was dangerously close he put his brakes on hard, causing his car to skid from side to side and go out of control.

In his counterclaim the defendant alleged that plaintiff "carelessly, negmigently, recklessly and unlawfully, and wholly without regard to the safety of the public in the use of said highway, ran his said car, with great force and violence, upon and against defendant's car, damaging and wrecking the same, * * *."

These allegations the defendant's evidence entirely failed to support, and therefore, under this state of the record, it was not error for the trial court to give the jury instruction No. 5, in which the jury were told that the defendant's counterclaim was withdrawn from their consideration, "and in arriving at your verdict you shall not take into account any monetary value of repairs to defendant's car or the loss of the use thereof."

The defendant next charged the court with error in the giving of instruction No. 12 on sudden emergency, which read as follows: "Where the operator of a motor vehicle by a sudden emergency not due to his own negligence is placed in a position of imminent danger, and has insufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as is required under ordinary circumstances; and if he pursues a course of action to avoid an accident, such as a person of ordinary prudence placed in a like position might choose, he is not guilty of negligence even though he did not adopt the wisest choice. So, if you find in this case that plaintiff was suddenly confronted with an emergency not due to his own negligence you will then consider the foregoing rule and determine whether under the conditions plaintiff used ordinary care."

The defendant objects to this instruction on the ground

that it was a statement of an abstract proposition of law, and not within the issues presented by the pleadings. Defendant charges that the giving of this instruction was highly prejudicial to the defendant, and that it suggested to the jury that they could excuse the plaintiff for his contributory negligence.

The opinion of the majority sustains the defendant in his contention and denies that there was a sudden emergency. Let us examine some of the evidence as to whether there was an emergency.

The plaintiff testified as follows: "Q What would be the effect of one applying the brakes suddenly and severely? A He would lose control of his car on the highway. Q From the appearance of the course that Mr. Auker's car took after he came out into your traffic lane, would you say he applied his brakes severely to that automobile? A That is the way it looked, slammed on his brakes. Q After that did he apparently have any control of the automobile? A No, I don't think he had any control at all."

Howard Carter, whose car the defendant attempted to go around, testified: "Q What was the condition of the pavement itself as regards being slippery or dry? A Icy. Q And was this icy condition, was that plainly visible to anyone driving that highway? A Yes. Q Were you driving slower than your usual rate of speed? A Yes. Q And for what reason were you driving slower?' A Fog and ice."

Frank Kukuk testified on direct examination that the road was "real slippery" and had "A little ice on it."

The defendant differed with these three men, and testified: "Q You heard the testimony of Mr. Kukuk and Mr. Carter that the pavement was icy, didn't you? A It was later on, yes. Q At the time of the accident they testified to. A No, it wasn't. I wouldn't say it was icy at all, it was wet. Q It was slippery enough so that your car went into a skid when you applied your brakes? A That's right."

Now, the evidence is that the defendant was driving very fast a little over a mile back when he passed Frank Kukuk, who testified: "Q At what rate of speed were you driving that morning? A Well, I was going awful close to fifty. * * * Q After the defendant's car passed you as you have testified, did you continue to drive at about the same rate of speed you had been driving? A Yes, I did. Q Did the defendant's car remain within the range of your vision? A No, he got away from me. * * * Q After you had driven on up the road you came to the scene of the accident? A Yes, sir. Q About how far was it from the point where the defendant had passed you? A I would say it was over a mile. Q A mile or so east of there? A Yes."

The facts indicate that when defendant went around the Carter car he saw plaintiff coming towards him. Defendant testified: "Q And you slammed them on as hard as you dared to, is that what you say? A Yes. Q You had thrown your car into a skid, didn't you? A Yes, sir. Q Which way did you skid? A It skidded to the right first and then to the left and I was going straight east when we collided. Q And you weren't able to control your car after you slammed on the brakes at all? A Not for a minute."

This court has frequently held that a motorist who drives his automobile so fast on a highway at night, (or on a foggy morning when using his lights, as defendant was in the case at bar,) that he cannot stop in time to avoid a collision with an object within an area lighted by his headlights is negligent as a matter of law. See Redwelski v. Omaha & C. B. Street Ry. Co., 137 Neb. 681, 290 N. W. 904; Roth v. Blomquist, 117 Neb. 444, 220 N. W. 572; Cotten v. Stolley, 124 Neb. 855, 248 N. W. 384; Most v. Cedar County, 126 Neb. 54, 252 N. W. 465; Hendren v. Hill, 131 Neb. 163, 267 N. W. 340; Fischer v. Megan, 138 Neb. 420, 293 N. W. 287.

Under this state of facts, it is my opinion that the plaintiff was confronted with a sudden emergency, and

the instruction on that subject was correctly given.

"The emergency rule exculpates one when he acts upon his judgment in an emergency of imminent peril not created by his own fault." Hanson v. Matas, 212 Wis. 275, 249 N. W. 505, 93 A. L. R. 546.

The necessity of acting suddenly, without opportunity for deliberation, is a circumstance to be taken into consideration in determining what is ordinary care in that situation. In the case at bar, the court also gave the usual instruction on contributory negligence.

In the majority opinion it is said that the court should have instructed the jury on the last clear chance doctrine, although the defendant did not submit any instructions and did not assign its omission as one of the errors of the court.

Before the doctrine of last clear chance can apply, the party must have had a chance to avoid the collision, for the doctrine presupposes time for action. See 5 Am. Jur., Automobiles, § 490, p. 778; Diehm v. Dargaczewski, 135 Neb. 251, 280 N. W. 898.

After defendant had dashed out to pass the Carter car, and when his car went out of defendant's control, what time for action did the plaintiff have to avoid a collision? I submit that under the evidence he had none. There was no valid reason that I can see for giving an instruction on last clear chance in this case.

"It may be admitted that under the Constitution the right of trial by jury is guaranteed to all citizens. This right cannot be violated by a legislative act, or by judgment of the court, yet not all cases must be submitted to a jury. It is just as erroneous to submit a case to a jury, and permit the jury to speculate with the rights of a litigant, when no question for the jury is involved, as it is to deny to a citizen his trial by jury when he has that right. J. C. Penney Co. v. Robison, 128 Ohio St. 626, 193 N. E. 401, 100 A. L. R. 705." Smith v. Epstein Realty Co., 133 Neb. 842, 277 N. W. 427.

The verdict of the jury and the judgment thereon in

this case are now sent back for a new jury trial, with all of the expense and delay that this incurs, and the court in a retrial is to submit the defendant's claim of $172.75 for car repairs to a jury, when one jury has already decided this case for the plaintiff. In my own humble opinion, after holding district court in 31 counties in Nebraska, if a new jury should decide that the defendant's cross-petition claim was valid the trial judge would have to set it aside, as there would be no evidence to support negligence on the part of the plaintiff.

In my opinion, the instructions in this case were much more favorable to the defendant than he was entitled to, the verdict was the only one that could have been reached, and the judgment entered thereon should have been affirmed.