PERRY EARL DAVIS, APPELLANT, V. L. J. ROOSMAN, INDIVIDUALLY, ET AL., APPELLEES.

140 N. W. 2d 639

Filed March 4, 1966. No. 36061.

Mitchell, Taylor & Beatty, for appellant.

Smith Brothers and Lawrence F. Weber, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

The plaintiff Perry Earl Davis brought this action in the district court for Custer County to recover damages for personal injuries sustained in an automobile collision against the defendant Harold C. Butterfield, the driver

of a truck owned and being operated on the business of his employer, the defendant L. J. Roosman, doing business as Rural Gas Utility and Rural Welding Supply Co. The defendants' joint answer, so far as it is of significance here, denied the allegations of negligence alleged in the plaintiff's petition and alleged the collision was caused solely and proximately by the negligence of the plaintiff, and that any negligence on the part of the defendants was slight in comparison therewith. The defendant Roosman filed a separate cross-petition seeking to recover damages to his truck from the plaintiff. Hereafter where the defendant is used in the singular, it will refer to the driver of the truck, Harold C. Butterfield.

A trial to a jury resulted in a verdict finding that neither the plaintiff nor defendants were entitled to recover, and judgment was entered dismissing the plaintiff's petition and the cross-petition.

The plaintiff has appealed from an order overruling his motion for a new trial. There is no cross-appeal.

The accident happened about 11:45 a.m., on August 21, 1961. It occurred on a graveled road approximately 7 miles northeast of the town of Callaway in Custer County. There were floating clouds and at times sprinkles of rain. The road there extends north and south and the collision occurred a short distance south of the crest of a hill which both vehicles had but a brief time before approached. Plaintiff was driving a 1959 Ford owned by his employer, State of Nebraska, southward toward the hill from the north. The defendant approached the hill in a 1959 International truck from the south. The plaintiff had stopped at the foot of the hill to its north. There is a short, comparatively level place at the crest of the hill. The road curves slightly to the west, going north, some 70 feet south of the crest. The road is cut through the hill with high banks on each side.

Plaintiff testified that after getting back in his car he

started in low gear and thereafter shifted into second proceeding up the hill. He let up on the gas as he approached the crest. He saw the top of the truck coming north. It was directly in front of his car, coming up the hill and making the bend. It straddled the imaginary centerline of the road. Plaintiff was driving about 5 miles per hour when he first saw the truck. The grade going up hill was fairly steep. Plaintiff applied his brakes and kept them on until the point of impact. His Ford went straight up the road on its right side. Before the impact the defendant pulled the front end of his truck over toward its right side of the road but its rear wheels were still over on plaintiff's side. The bumper of the Ford sideswiped the bumper of the truck and the front of the truck box was what he hit. Plaintiff's Ford was straight with the side of the road. On impact the Ford was thus going straight and the truck at an angle. His car was practically stopped at the point of impact. On cross-examination the plaintiff testified he let up on the gas and applied the brakes when he knew the truck was coming toward him. When he let up on the gas he was going around 35 or 37 miles per hour. The car was practically stopped when the truck hit. The truck was proceeding at 35 to 45 miles an hour. Plaintiff, who was severely injured, had his car keys in his hand when he came to from the shock. At the trial he did not remember when he turned the ignition off but he had stated in a deposition it was when he applied his brakes.

The defendant testified he was driving the truck to the north up hill in third gear. The truck with its load weighed around 8 tons. It was being driven 15 to 20 miles an hour pulling the hill which is about all the loaded truck would make going upgrade in third gear. The truck was on the right side of the road. Defendant saw the plaintiff's car about 100 yards away. Outside of the traveled portion, the road was rough and eroded but the traveled portion was smooth. The defendant's truck was within a foot or so of the east edge of the road

at the point of impact. There were 5 feet of the traveled portion of the road to the plaintiff's right. Plaintiff was coming quite fast. The defendant proceeded on straight ahead and the left front of the two vehicles collided within 2 or 3 seconds. Plaintiff's car came straight for the truck and defendant had no place to go. He drove the truck on over the hill, applying his brakes on the other side, and stopped on the edge of the road 119 feet from where the plaintiff's car came to rest.

Exhibit 41 is an enlargement of the diagram originally contained in the report of the patrolman who testified as to the measurements and distances he marked thereon after the accident which the plaintiff and defendant both concede to be correct. The position of the crest of the hill is shown. Skid marks are shown laid down by plaintiff's car which commenced a short distance north of the crest. These marks run south in a straight line up over the crest and on south. The skid marks from the left front wheel are 68 feet and of the right front wheel 70 feet in length. At the south end of these marks on the exhibit is shown an area of debris. The skid marks of the rear wheels are shorter, those of the left wheel being 57 feet long. They end in an arc, showing the back of the car had swung around to the right, and the vehicle came to rest facing northeast with its rear in the ditch. At their beginning north of the crest of the hill, the left skid marks are 13 feet from the east edge of the traveled road to plaintiff's left. The right skid marks there were 5 feet from the right, or west edge of the traveled road. The car is 6 feet wide. The traveled road there is 23 feet wide. Throughout their entire length there is a space of 5 feet to the right of plaintiff's right skid mark on the traveled road. However, at and about the point of the debris the traveled road is narrower and varies from 19 to 20 feet wide. There is still 5 feet of traveled road to the right of the Ford's right skid marks but only 8 feet to the left of the car's left skid marks. It follows that plaintiff's car, at the place of the accident, had

usurped over half of the traveled portion of the road.

From photographs in evidence taken of the road after the accident, these skid marks are shown also and there is a gouge mark in the road at the south end of the left front skid marks laid down by plaintiff's car. The traveled road to the west of this gouge mark and the plaintiff's left skid mark is shown to be considerably less· than half the traveled road. Photographs of plaintiff's car show damage to the left front bumper and the left front fender and side as far back as the trunk. The photographs of the truck show the front left bumper and fender were damaged to the greatest extent although a dent appears in the front portion of the lefthand skirt beneath the box.

Plaintiff assigns error to the trial court in refusing to give his tendered instruction by which he requested the submission to the jury of the sudden emergency doctrine. The physical facts shown from the plat of the highway testified to by the patrolman and conceded by the plaintiff to be correct as to the markings and measurements thereon as well as the photographs in evidence clearly show the plaintiff drove his car straight up the road with 5 feet of travelable road to its right after applying his brakes. It as plainly shows that there were only 8 feet, or less than half of the road, to the left of these skid marks near the area of debris in which the defendant could turn his truck in order to pass. Exceptions to the sudden emergency rule are stated in Roby v. Auker, 149 Neb. 734, 32 N. W. 2d 491, as follows: "The emergency rule cannot be successfully invoked by either party in a negligence case unless there is competent evidence to support a conclusion that a sudden emergency actually existed, and then it cannot be successfully invoked by one who has brought that emergency upon himself by his own acts or who has not used due care to avoid it." In the present case the physical evidence shows that the plaintiff did not use due care in driving to the right of the center of the road and his own

acts brought about the emergency. The trial court did not err in refusing the instruction.

Plaintiff urges the court erred in not submitting to the jury all of the alleged ultimate acts of negligence. The plaintiff's petition alleged the defendant's truck had defective brakes but there is no evidence of such a defect. The plaintiff in four allegations alleged that the defendant failed to turn his truck to the right; that he drove into the left side of the road; that he failed to keep right of the road's center to permit passing; and that he failed to yield half of the road. Patently this is a different way of saying the same thing. The trial court's instruction stated that plaintiff alleged the defendant was negligent in driving his truck to the left side of the roadway. Repetitious allegations of negligence may be summarized and the court has no duty to repeat them separately in its instructions. Kroeger v. Safranek, 165 Neb. 636, 87 N. W. 2d 221. The contention is without merit.

Plaintiff contends that the court's instruction on contributory negligence is not accurate and hence was erroneous. He sets out a portion only of instruction No. 6, to wit: "* * * contributory negligence 'consists of doing the wrong thing at the time and place in question, or it may arise from doing nothing when something should have been done.'" He does not state the definition of negligence set forth in the first part of this same instruction, as follows: "By 'negligence' is meant the doing of some act under the circumstances surrounding the accident involved, which a man of ordinary prudence would not have done, or the failure to do some act or to take some precaution, which a man of ordinary prudence would have done or taken." As given in instruction No. 6, contributory negligence is referred to generally and briefly. Instruction No. 12 applies contributory negligence to the case before the court. An examination of this latter instruction reveals that contributory negligence is defined in terms of negligence. That instruction sets forth the rules with respect to contributory

negligence and applies it to the doctrine of comparative negligence. No objection is made to instruction No. 12. The plaintiff quotes a brief statement in instruction No. 6 without relating it to all the instructions. In Myers v. Willmeroth, 151 Neb. 712, 39 N. W. 2d 423, this court in its syllabi stated: "When different instructions are given on the same subject, they should be considered together, and if they fairly submit the case, it will not be reversed for indefiniteness or ambiguity in one of the instructions.

"In determining whether or not there was error in a sentence or clause of an instruction, it will be considered with the instruction of which it is a part and the other instructions, and the true meaning thereof will be determined not from the sentence or phrase alone but by a consideration of all that is said on the subject." We have reviewed all of the instructions on contributory negligence and, taken as a whole, we think they fairly submitted that issue to the jury. The plaintiff's contentions cannot be sustained.

The plaintiff objects to the reception of a photograph of the road looking south from a point not fully disclosed. It was introduced by the defendant on cross-examination of the plaintiff. The plaintiff, when asked if it generally reflected the course of the highway as he knew it, stated, "I think it would be." Later plaintiff asked from what point it was taken and indicated he could not swear it was the road. It was thereafter admitted over objection that it was immaterial and no sufficient foundation was laid. The judge in admitting it restricted its reception to a correct reflection of the road looking south but not from any particular point. It is quite evident that this is a photograph of the same road and scene portrayed in the photograph exhibit No. 1 previously introduced by the plaintiff, taken from a slightly different position without the plaintiff's wrecked Ford partially obstructing the view. It was but cumulative in any event and as restricted by the trial court

there was no abuse of discretion in its admission. Watson Bros. Transp. Co. v. Jacobson, 168 Neb. 862, 97 N. W. 2d 521.

Plaintiff's last claim is that the court erred in allowing defendant Roosman to testify over objection as to the cost of the repair to his truck. It is unnecessary to consider the alleged error. The finding of the jury that neither party was entitled to recover foreclosed the possibility of prejudicial error in the receipt or rejection of evidence on the subject of damages. Perrine v. Hokser, 158 Neb. 190, 62 N. W. 2d 677.

We find that the trial court committed no reversible error as urged by the plaintiff. The verdict and judgment of the trial court are affirmed.

AFFIRMED.