LEA ANN LAIRD, BY JOHN LAIRD, HER NEXT FRIEND AND FATHER, APPELLANT, V. LARRY B. KOSTMAN, APPELLEE.

425 N.W.2d 607

Filed July 8, 1988. No. 86-418.

Claude E. Berreckman, of Berreckman & Berreckman, P.C., for appellant.

Frank E. Piccolo, of Murphy, Pederson, Piccolo & Pederson, for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BURKHARD, D.J.

BOSLAUGH, J.

This action was commenced by John Laird, as father and next friend of the plaintiff, Lea Ann Laird, to recover damages for the injuries she sustained in an automobile-bicycle collision in Cozad, Nebraska, on August 7, 1982. The defendant, Larry B. Kostman, was driving his automobile at the time it collided with a bicycle operated by the plaintiff. As a result of the collision the plaintiff sustained severe injuries to her left leg.

The accident happened at about 6:40 p.m. in the 300 block of East 8th Street. The street runs east and west and is paved with asphalt and concrete. The street is approximately 50 feet wide, with parking lanes 11½ feet wide adjacent to each curb and 27 feet for traffic lanes.

It was a clear, warm, sunny day, and the street was dry.

The plaintiff, who was almost 12 years of age at the time of the accident, was going to Food Town, a grocery store, on an errand for her mother. She was riding her sister's 12-speed boy's bicycle. Although the bicycle had a bar at the top, she was tall enough so that she had no difficulty straddling the bar with her feet on the ground.

The plaintiff had been babysitting two children that day, Jillian Houston, who was 3 years old, and Cody Houston, who

was 6. The Houston children accompanied the plaintiff to the store, Jillian riding on a rack at the rear of the bicycle behind the seat.

The plaintiff rode the bicycle from her home, approximately a block and a half from the scene of the accident, and stopped on the sidewalk along the north side of 8th Street when she reached the driveway at 310 East 8th Street. There was a white Ford van headed west and parked at the curb on the north side of 8th Street, just east of the driveway. The plaintiff testified that she "walked" the bicycle down the driveway and into 8th Street in front of the van until she reached a point where she could see around the van to the east.

On direct examination the plaintiff testified the bicycle was not moving at the time of the impact, "Just, you know, just starting out, like getting one foot on the pedal, you know, just so I could start going," and the bicycle was stopped with "probably just the front wheel and a little bit more in front of the van so that I could see out around the van . . . ."

On cross-examination the plaintiff testified that "maybe 2 feet" of the bicycle was "sticking out" into the street from the van and that she leaned forward, "probably . . . right over the brakes" on the handlebar, when she looked to the east and the west for approaching traffic. She also said that "[m]ost of my body" was standing out in front of the van and only the back wheel, seat, and "[m]aybe the pedals" were protected by the van.

The plaintiff said that she looked to the east and saw no traffic approaching, looked to the west and saw no traffic approaching, and then looked to the east again and "[s]tarted to go across the street" when she saw and heard the defendant's automobile coming toward her. She said, "I threw Jill — turned around and threw Jill off, backing up the bike at the same time and it was a 12-speed bike, so, the brakes locked and I threw Jill off and then that's when he hit the bike and my leg."

The front bumper and front of the hood struck the plaintiff and her bicycle, throwing the plaintiff to the west and north where she landed in the street.

According to a police sergeant who was called to the scene of the accident, the defendant's automobile was stopped in the

westbound lane of the street with the front of the automobile "part-way through the driveway." The right front wheel was 31 feet from the corner of the driveway, and the right rear wheel was approximately 18 feet from the same point. The skid marks behind the defendant's automobile were 21 feet long.

The plaintiff testified that she saw the defendant turn onto 8th Street from Avenue D, an intersection that is more than 200 feet east of the point of impact.

The defendant testified that he turned onto 8th Street from Avenue Newell, approximately three to four blocks east of Avenue D, the first intersection east of the scene of the accident. The defendant stopped at a flashing red light at Avenue C, the first intersection east of Avenue D. The defendant then proceeded on west to Avenue D at 15 miles per hour. At the intersection of Avenue D the defendant increased his speed to approximately 20 miles per hour. According to the defendant, visibility was excellent and he could see clearly all the way to the stoplights downtown, a distance of two or three more blocks. The sun at that time was about at the level of the tops of the buildings downtown, but did not interfere with the defendant's vision because the street was partially shaded by trees along the street. As he approached the scene of the accident, he saw the white Ford van parked in front of 310 East 8th Street. The defendant testified that he saw a "hint of a light coming off the top of [his] window" and, as he reached up to pull the visor down, he saw the bicycle "right in front of me." He estimated he might have had a tenth of a second's reaction time to "hit" his brakes. The bicycle came out of the driveway at 310 East 8th Street on the other side of the parked van. The defendant applied his brakes and felt a surge forward, and then the impact occurred.

The defendant testified that his automobile stopped right in front of the driveway and that when he first saw the bicycle he could see "the whole thing," but did not see the little girl riding on the back of the bicycle.

The plaintiff testified that after the accident the defendant kept repeating and exclaiming, "Oh, my god, I couldn't see her, the sun was in my eyes." The police officer testified that the defendant said he was unable to see anyone and everything,

because of the sun, until about a second or so before the accident. On cross-examination the defendant was asked if he had told the police officer that "you couldn't see a thing because of the sun." The defendant answered, "Somewhat, yes, at that time." The defendant testified that he could not see anything because of the sun, "Just for a split second," and as he was reaching for the visor, "I caught something coming from the right side of the car and I hit the brakes instantaneously." When he saw the plaintiff, she was moving out into the street. He estimated that he traveled "[m]aybe 3 feet" while the sun was a factor and that it all happened really suddenly.

Delbert Wirtjes was a passenger in the defendant's automobile at the time of the accident. Wirtjes testified by deposition that the "[f]irst thing I felt was the brakes, and then I seen her coming over the hood of the car and falling right down by my door." Wirtjes did not see the plaintiff before the accident, and stated: "She just come out of nowhere or as, because, I didn't see her either, just like that it happened, she just came out of nowhere."

According to Wirtjes, the defendant's car stopped 6 to 10 feet south of a parked vehicle, and there was room so "I think another car could have got between us."

The case was submitted to the jury on issues of negligence, contributory negligence, and comparative negligence. The plaintiff requested an instruction on last clear chance, NJI 3.23, which was refused. The jury returned a verdict for the defendant.

The plaintiff has appealed and has assigned as error the refusal to instruct on last clear chance. There are a number of reasons why we believe it was not error for the trial court to refuse to instruct on the doctrine of last clear chance.

In *Kruger v. Omaha & C. B. Street R. Co.*, 80 Neb. 490, 495, 114 N.W. 571, 573 (1908), this court stated:

> The doctrine of the "last clear chance" simply means that, notwithstanding the previous negligence of the plaintiff, if at the time the injury was done it might have been avoided by the exercise of reasonable care on the part of the defendant, the defendant will be liable for the failure to exercise such care.

In *Whitehouse v. Thompson*, 150 Neb. 370, 372-73, 34 N.W.2d 385, 386 (1948), we set out the requirements necessary in order to invoke the doctrine of last clear chance:

> In order to recover under the doctrine of the last clear chance in this state there must be sufficient evidence to sustain a finding (1) that the party invoking the doctrine was by his own negligence immediately before the accident in a position of peril from which he could not escape by the exercise of ordinary care, (2) that the party against whom it is asserted knew or ought to have known of the other's peril, (3) that the party against whom the doctrine is invoked had the present ability with the means at hand to avoid the accident without injury to himself or others, (4) that the failure to avoid the accident was due to a want of ordinary care on the part of the person against whom the doctrine is invoked and that such want of ordinary care was the proximate cause of the accident, and (5) that the negligence of the party imperiled is neither active nor a contributing factor in the accident.

In order to submit the doctrine to the jury there must be competent evidence to sustain each of the foregoing elements, *Bush v. James*, 152 Neb. 189, 40 N.W.2d 667 (1950), and the issue must have been raised by the pleadings, *Kubo v. Fish*, 152 Neb. 74, 40 N.W.2d 270 (1949).

Last clear chance is applicable only to excuse the contributory negligence of the plaintiff. *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983).

The doctrine has no application unless the person claiming its benefit puts himself in the position of admitting that immediately before the accident he found himself in a place of peril through his own negligence from which he could not escape by the exercise of ordinary care. *Carter v. Zdan*, 151 Neb. 185, 36 N.W.2d 781 (1949).

A person who is himself negligent may not recover under the doctrine of last clear chance where his negligence is active and continuing to the very time of the accident. *Whitaker v. Burlington Northern, Inc.*, 218 Neb. 90, 352 N.W.2d 589 (1984).

There is also a time factor. As we said in *Bush v. James, supra*

at 196-97, 40 N.W.2d at 672-73:

> As stated in 38 Am. Jur., Negligence, § 219, p. 905: "The doctrine is not applicable where the emergency is so sudden that there is no time to avert the accident. Succinctly stated, the last clear chance must be a clear one."
>
> We have said in Ellis v. Union P. R. R. Co., *supra*:
> " 'Before the doctrine of last clear chance can apply, the defendant must have had a chance to have avoided the collision, for the doctrine presupposes time for action.' Diehm v. Dargaczewski, 135 Neb. 251, 280 N.W. 898; Moses v. Mitchell, 139 Neb. 606, 298 N.W. 338."
>
> " 'In the absence of proof of opportunity to avoid injuring such person after his danger was discovered, or ought to have been discovered, there is no reason for the application of the "last clear chance" doctrine.' Johnston v. Delano, 100 Neb. 192, 158 N.W. 1034." Nielsen v. Yellow Cab & Baggage Co., 130 Neb. 457, 265 N.W. 420. See, also, Moses v. Mitchell, 139 Neb. 606, 298 N.W. 338.

The amended petition did not plead the doctrine and did not plead facts which would raise the doctrine as an issue. Although the facts alleged might be said to allege the plaintiff was in a position of peril, there is nothing pleaded to allege that her situation was a result of her own negligence. The plaintiff's position is that she was free of negligence.

The plaintiff testified that she saw the defendant's automobile when it was at the intersection of Avenue D, more than 200 feet east of the point of impact. Although she testified that as she attempted to move the bicycle backward, the brakes locked, presumably preventing further backward motion, there was nothing alleged or proven to show that the plaintiff was prevented from turning the front wheel of the bicycle to the right and moving the bicycle to the west and then toward the curb to a position of safety.

Under the plaintiff's evidence, only approximately 2 feet of the bicycle extended into the street beyond the parked van. Thus, under her theory of the facts, she was not in a position of peril from which she could not escape by the exercise of ordinary care. Stated differently, her failure to move the bicycle

out of the path of the defendant's automobile was negligence which was active and a contributing factor to the accident.

All of the evidence suggests that the accident happened rather suddenly. While there was sufficient evidence of negligence on the part of the defendant to submit the case to the jury, it is a very close question as to whether the defendant, in fact, had a last *clear* chance to avoid the collision.

From our review of the record, and for the reasons stated, the trial court properly refused to submit the doctrine of last clear chance to the jury.

The judgment of the district court is affirmed.

AFFIRMED.

SHANAHAN, J., concurs in the result.