KAREN MAGDALENO, APPELLANT, v. NEBRASKA PANHANDLE COMMUNITY ACTION AGENCY ET AL., APPELLEES.

241 N. W. 2d 114

Filed April 14, 1976. No. 40338.

Wright & Simmons, for appellant.

James R. Hancock, for appellees.

Heard before SPENCER, McCOWN, and BRODKEY, JJ., and MURPHY and COADY, District Judges.

SPENCER, J.

This appeal is from a trial de novo in the District Court after that court sustained the finding of the Workmen's Compensation Court on a direct appeal. Both courts found Karen Magdaleno, plaintiff, had failed to maintain her burden of proving the disabilities she now suffers are the result of an accidental injury arising out of and in the course of her employment by the defendant, Nebraska Panhandle Community Action Agency, and dismissed her petition. We affirm.

To point up the issue it is only necessary to briefly sketch the testimony. Plaintiff injured her back in April of 1968 when she fell down some stairs at home. She had pain in the lumbosacral area with nerve root irritation of sufficient severity to hospitalize her for a full week. X-rays at that time revealed a narrowing of the disc space between discs L-4 and L-5, and a questionable narrowing between L-5 and S-1. Her physician, Doctor Gentry, discontinued his treatment of her May 21, 1968.

Plaintiff testified that on October 6, 1970, while riding in the defendant's school bus, it left the road and came to a sudden stop. She testified she felt a sudden sharp pain in her back. Plaintiff was wearing a seat belt at the time. Because of pain she went to a chiropractor a day or so after that event. The chiropractor's treatment did not give her relief, so on October 22 she consulted Doctor Gentry.

Doctor Gentry testified X-rays showed very little if any change from the previous ones. Plaintiff still had a narrowing of the disc spaces referred to previously. Plaintiff had a slightly abnormal back. Whether it was caused by the 1968 injury nobody could say. The pain on this occasion was considerably more severe than in 1968. Also, the objective finding of muscle spasm and limp was worse. Plaintiff consulted Doctor Gentry on several occasions after she went back to work. The record, however, does not indicate she lost any time from work because of back trouble from then until 1973.

On February 18, 1973, after doing breakfast dishes at home, a rag slipped from plaintiff's hand and she stooped over to pick it up. She felt a real sharp pain that made her "go down." The pain was in the same area where she had suffered pain before, but it was much sharper than before. She was hospitalized and put in traction. Her doctor consulted Doctor Simpson, an orthopedic specialist, on February 26, 1973.

Plaintiff was thereafter referred to Doctor Boyd, an orthopedic specialist in Denver, where she was hospitalized. Doctor Boyd first saw her on March 18, 1973. At that time she advised him that she had suffered intermittent trouble with her back for about 6 years. The doctor took X-rays but found nothing not disclosed in the other X-rays. He performed a myelogram and treated her with bed rest. She became dissatisfied with his treatment and decided to go home. She was discharged from the Denver hospital on March 24, 1973,

and returned to the Nebraska hospital. After gradual improvement she was dismissed on April 6, 1973.

On June 18, 1973, a sudden onset of more severe pain resulted in her readmission to the hospital. Tests taken at this time indicated a disc infection and inflammation of L-4 to L-5. It was Doctor Simpson's opinion that plaintiff had a disc space infection on June 26, 1973, and that its cause was hematogeneous, which we translate to mean an infection disseminated by the circulation, or through the blood. Plaintiff did not return to work until October 1973.

In the opinion of plaintiff's two medical witnesses, her problems on February 18, 1973, with reasonable medical certainty, were caused by her accident of October 1970. Both doctors testified the June 1973 infection had localized in the area it had because that part of the back was a place of continuous stress, and further the October 1970 accident had caused the continued stress and diminished resistance.

Doctor Boyd, who testified by deposition, stated he was not aware of any body of scientific evidence that would support the conclusion that continued stress could lead to infection. He believed the severity of the February 18, 1973, injury would be more significant. Plaintiff had worked without much interruption from her hospitalization in 1970 until February 18, 1973, when she ceased working until October of 1973. Doctor Boyd felt plaintiff may have had the infection in her body prior to February 18, 1973, but it developed in the disc about the time of her hospitalization following the February 18 injury. He specifically disagreed with the conclusion that her problem was caused by the injury of October 6, 1970. He was positive also that her disc space infection had no connection with her injury in 1970.

The opinion of plaintiff's doctors was based in part on their assumption that plaintiff had been symptom free from the time of her injury in 1968, which occurred at home, until the 1970 work-related incident. Plaintiff

admitted in cross-examination that she had seen a chiropractor for back problems more than once between 1968 and 1970. A coworker testified that on several occasions plaintiff complained of back trouble during that period. Plaintiff's doctors admitted their opinions might be changed by knowledge of visits to chiropractors or incidents of back trouble between 1968 and 1970.

Plaintiff sought to minimize her visits to a chiropractor by testifying she consulted him for treatment of her upper back and shoulder. Doctor Boyd, on the other hand, testified plaintiff told him she had experienced back pain for 6 years prior to the time he saw her in March 1973. Plaintiff did not deny she gave this history to Doctor Boyd.

In Gifford v. Ag Lime, Sand & Gravel Co. (1971), 187 Neb. 57, 187 N. W. 2d 285, we said: "We * * * hold that on appeal of a workmen's compensation case to the Supreme Court, if there is reasonable competent evidence to support the findings of fact in the trial court, the judgment, order, or award will not be modified or set aside for insufficiency of the evidence. We also hold that upon appellate review of a workmen's compensation case in the Supreme Court, the cause will be considered de novo only where the findings of fact are not supported by the evidence as disclosed by the record."

The specific finding of the District Court challenged here is that the plaintiff failed to prove her injury arose out of and in the course of her employment. Since Gifford, when we review a case de novo, we essentially hold to the rule that in a workmen's compensation proceeding a District Court finding against a party will only be set aside if the evidence compels a finding for that party. See Adler v. Jerryco Motors, Inc. (1972), 187 Neb. 757, 193 N. W. 2d 757.

Plaintiff's argument is essentially that the testimony of her two medical witnesses compels a finding in her favor. We do not agree. First, there is a serious disagreement in the medical testimony. Defendant's expert medical

witness was equally positive that the accident of October 1970 was not the cause of plaintiff's problems in 1973. To accept plaintiff's argument would require us to ignore the defendant's evidence. This we cannot do. It is obvious to us why the two previous courts, in view of defendant's evidence, found plaintiff had failed to meet her burden of proof.

Second, there is the problem of the incomplete history given by the plaintiff to her physician. It is undisputed that both of plaintiff's witnesses based their medical opinion on the history of trouble given to them by her. This did not include reports of any problems or treatment between 1968 and 1970. There is some evidence in the record that plaintiff did have such problems. As we said in Gotfrey v. Sakurada (1960), 169 Neb. 879, 101 N. W. 2d 470: "The value of an opinion of an expert witness is dependent on, and is no stronger than, the facts on which it is predicated. The opinion has no probative force unless the premises upon which it is based are shown to be true."

In Snowardt v. City of Kimball (1962), 174 Neb. 294, 117 N. W. 2d 543, we said: "Triers of fact are not required to accept as absolute verity every statement of a witness not contradicted by direct evidence. The persuasiveness of the evidence may be destroyed even though not contradicted by direct evidence."

On this record, we cannot say that the two previous courts were wrong. The evidence does not compel a finding that the injuries now suffered by the plaintiff arose out of and in the course of her employment by the defendant.

Doctor Boyd testified that the February 18, 1973, injury was of significant severity. Her own orthopedic specialist testified that plaintiff's injury of 1973 was of significant proportions. Plaintiff stooped to pick up a washcloth and could not straighten her back. To hold for plaintiff we would need to hold this was a continuation of the problem created by the October 1970 acci-

dent. This we are unable to do. On this record we cannot say the 1973 problem was not the culmination of the problem created when plaintiff first fell down the stairs at her home in 1968, or possibly some occurrence other than the 1970 episode.

The judgment is affirmed.

AFFIRMED.