LOREN L. LINTNER, APPELLANT, V. DEAN R. ROOS, APPELLEE.

276 N. W. 2d 93

Filed March 6, 1979. No. 41844.

Robert E. O'Connor & Associates, for appellant.

Thomas A. Otepka of Gross, Welch, Vinardi, Kauffman & Day, for appellee.

Heard before SPENCER, Retired Justice, BOSLAUGH, and WHITE, JJ., and WOLF and SPRAGUE, District Judges.

WOLF, District Judge.

The jury returned a verdict for the defendant in this action for damages as a result of a rear end automobile collision accident occurring on September 28, 1975, at the intersection of Highway No. 50 and 11th Street in Syracuse, Otoe County, Nebraska. The defendant's answer admitted that the accident was proximately caused by his negligence but specifically denied the accident caused the injury and damages alleged to have been sustained by the plaintiff. The trial court instructed the jury that the defendant had admitted he was negligent in the operation of his automobile and that his negligence was the proximate cause of the collision. The court instructed the jury that before the plaintiff may recover from the defendant, he must prove by a preponderance of the evidence that (1) he sustained personal injury, (2) that the personal injuries were proximately caused and the proximate result of the accident in question, and (3) the nature, extent, and amount of his damages for such injuries.

The plaintiff's motion for a new trial contended that the verdict was not sustained by sufficient evidence, the verdict was contrary to law, the jury failed to follow the instructions of the court, and the verdict was contrary to the evidence. The District Court overruled plaintiff's motion for a new trial. We affirm the judgment of the District Court.

The plaintiff contends the evidence before the jury clearly indicates the plaintiff's injuries were the result of the accident and that in finding for the de-

fendant, the jury obviously must have ignored the evidence and the defendant's admission of negligence.

The court's instructions to the jury, the competency of the witnesses and the foundation for their testimony, and the conduct of the jury are not in any way questioned in this appeal. Thus the sole question is whether, upon review of the evidence, the verdict was so clearly wrong that we can say, as a matter of law, that the jury disregarded the instructions and returned a verdict for the defendant when reasonable minds could come to no other conclusion under the evidence than that the verdict should be for the plaintiff.

It is clear the plaintiff would not be entitled to a verdict, even for nominal damages, unless there is evidence to support a finding that the plaintiff was injured as a result of the accident or, as more commonly stated, that the accident was the proximate cause of the injury.

Plaintiff's evidence shows that the plaintiff was approximately 18 years of age at the time of the accident and was a student at Peru State College. On that day he had been to a rodeo where he had participated in the saddle bronc ride and bulldogging and as he was returning to his parents' home in Syracuse, Nebraska, the accident occurred. The plaintiff testified that he was shocked by the injury and his back and neck started to hurt. However, the officer investigating the accident has no record of any complaint of personal injuries by either party to the accident. After the accident the plaintiff drove the vehicle to his parents' home in Syracuse and took two aspirins. He drove to Peru State College that night, a distance of 35 or 40 miles, and although he didn't sleep too well that night, he went to his classes the next morning and for the next week or two ran a mile or a mile and a half each day to get in shape for wrestling. Plaintiff did not receive

medical attention until October 21, 1975, when he went to Dr. Wilson who advised the plaintiff he had bruised muscles and gave him some medication to relax his muscles. The plaintiff continued his working out for collegiate wrestling and next saw a physician on November 6, 1975, a Dr. Getscher, who advised him to discontinue wrestling. He next went back to Dr. Getscher on December 4, 1975, and the doctor released him to go ahead and wrestle. On December 6th the plaintiff was wrestling with a teammate in preparation for their first collegiate meet. His opponent threw a hold on him, twisted the plaintiff's arm around in a certain way, and something popped in the plaintiff's neck. Plaintiff next saw Dr. Getscher on December 11th and he had to stop wrestling for the year. Plaintiff relates additional incidents on January 27, 1976; January 30, 1976; and on October 13, 1976, when without any particular exertion on the part of the plaintiff, he experienced neck pain. In most instances the plaintiff went to a local physician and received a shot or other medication.

On October 22, 1976, the plaintiff saw a Dr. Matisons who gave the plaintiff permission to go ahead and continue his wrestling.

The only medical witness on behalf of the plaintiff was Dr. Gross who first saw the plaintiff on January 24, 1977. It was Dr. Gross' testimony that in his opinion the plaintiff's injuries were caused by the automobile accident of September 28, 1975. Dr. Gross described the plaintiff's injuries as a cervical strain with left cervical neuritis and myositis. He further testified that the plaintiff sustained a tear of his anterior longitudinal ligament and injury to the intervertebral disc at the C-5, C-6 level. Dr. Gross described the plaintiff's neck injury as permanent and placed plaintiff's degree of permanent disability at 5 percent loss of the use of the body as a whole.

Evidence introduced by the defendant included ad-

missions by the plaintiff that his neck felt better the second and even the third week after the accident and the admission that between September and November he could do almost everything he could do before the accident. When the wrestling season started in the middle of November, he was working out with the wrestling team 2 hours a day, 5 days a week, and was wrestling about 1 hour a day. After the plaintiff injured his neck wrestling on December 6, 1975, he said there wasn't anything he couldn't do except wrestle or ride a horse.

During the summer of 1976, the plaintiff worked for an electrical company pulling heavy bags of tools to other workers by pulley. He participated in several rodeos where his specialty was bronco riding. In the fall of 1976, he returned to college and did play some flag football but said the running did hurt his neck.

During the summer of 1977, he worked for Omaha Public Power District in Nebraska City in the trenches where he pulled wire and threw sandbags.

In August of 1977, he was involved in another automobile accident in which his automobile sustained about $1,200 damages. The plaintiff also participated in rodeos during the summer of 1977.

Plaintiff's evidence includes the medical records of Dr. Matisons and the doctor's examination on October 22, 1976. The examination report showed a normal examination of the cervical spine with a recommendation that the patient can participate in physical activity such as wrestling as desired. The physical examination showed no restriction of the motion of the neck, no particular tender areas, and X-rays of the cervical spine failed to reveal any gross abnormalities. The report showed "there was a question that either C-3 level [sic] of previous injury but this is well healed now" and there was no evidence of nerve root irritation.

The defendant brought out, on cross-examination

of the plaintiff, that the plaintiff didn't tell Dr. Gross about his previous injury to his head in 1968 when he was kicked by a horse or of his sustaining another injury to his head in an accident in 1973. Neither did he tell Dr. Gross about his wrestling accident in December of 1975, nor that he had participated in several rodeos after the accident.

The basic issue in this case is not whether there is some disability on the part of the plaintiff but whether any disability or injury was proximately caused by the accident. The question of causation and proximate cause is a question of fact for the jury. It is fundamental in our adversary system that a jury alone is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. A jury is not required to accept as absolute verity every statement of a witness not contradicted by direct evidence. Satterfield v. Watland, 180 Neb. 386, 143 N. W. 2d 124. The persuasiveness of evidence may be destroyed even though not contradicted by direct evidence. Meadows v. Skinner Manuf. Co., 178 Neb. 856, 136 N. W. 2d 184. A jury has the right to test the credibility of witnesses by their self interest and to weigh disputed parol testimony against all the facts and circumstances in evidence. It may then properly conclude whether the parol testimony is either false or incredible of belief. The jury is not required to accept the opinions of experts and the court so instructed the jury.

To justify this court in interfering with the findings of a jury on such a fact question, the preponderance of the evidence must be so clearly and obviously contrary to the findings that it is the duty of a reviewing court to correct the mistake. In reviewing the evidence herein, we must do so in the light of the fact that the jury verdict was for the defendant. Therefore, the defendant must have the benefit of any and all reasonable inferences deducible from the proof. Beavers v. Christensen, 176 Neb. 162, 125

N. W. 2d 551. We have also said in similar cases involving generally the same issue of proof of damages by subjective oral testimony that the evidence of damages is required to be direct and certain. The proof that damage might or could have been caused by the accident is not sufficient to sustain a verdict for the claimant.

Under our rules of review, we must resolve all conflicts in the testimony in favor of the defendant, who received the verdict of the jury together with inferences that may be reasonably drawn therefrom. Based upon the evidence before the jury, it is clear they could have found under all the evidence that the plaintiff received his injury, if indeed he was injured, at the rodeo the same day as the accident or that the injury diagnosed by Dr. Gross was actually incurred subsequent to the accident either in the wrestling or in the rodeo activity of the plaintiff.

A review of the evidence does not reveal that the verdict of the jury was so clearly against the weight of the evidence as to induce this reviewing court to believe that it was the result of passion, prejudice, mistake, or some means not apparent in the record.

The judgment of the District Court in overruling the motion for a new trial is correct and is affirmed.

AFFIRMED.