MARTHA OTT, PERSONAL REPRESENTATIVE OF FRED OTT, JR., DECEASED, APPELLEE, v. DOROTHEA E. FRANK, APPELLANT.

277 N. W. 2d 251

Filed April 3, 1979. No. 42026.

Raymond, Olsen & Coll and Rick L. Ediger, for appellant.

Robert P. Chaloupka of VanSteenberg, Brower, Chaloupka, Mullin & Holyoke, for appellee.

Heard before BOSLAUGH, CLINTON, WHITE, and McCOWN, JJ., and REIMER, District Judge.

REIMER, District Judge.
This action against the defendant, Dorothea E.

Frank, was brought by Martha Ott, personal representative of the estate of Fred Ott, Jr., under the first cause of action for the wrongful death of her husband, the decedent, and under the second cause of action for damages suffered by decedent during his lifetime. Plaintiff alleged that defendant negligently operated her automobile by driving it through the front door of Henry's Market in Scottsbluff, Nebraska, thereby striking and injuring plaintiff's decedent who died as a result of such injuries. The accident occurred on January 29, 1977, and the decedent died on February 13, 1977, with death caused by a pulmonary embolism secondary to thrombophlebitis and blood clots in the right leg which had been excessively bruised in the accident.

The trial court sustained plaintiff's motion for summary judgment and directed a finding of negligence against defendant on the issue of liability. After a jury trial on the issues of proximate cause and damages, the court further directed a finding against the defendant on proximate cause and submitted only the issue of damages to the jury. The jury returned a verdict on the first cause of action for $180,075.75 and on the second cause of action for $7,500. Defendant has appealed.

Defendant on her appeal assigned as error: (1) Granting a summary judgment in favor of plaintiff; (2) allowing testimony based upon gross earnings rather than net income or take-home pay as the measure of damages for decedent's statutory beneficiaries; (3) overruling the defendant's motion in limine with regard to projected future rates of economic inflation and income figures; and (4) excessive damages appearing to have been given under the influence of passion or prejudice, or contrary to law.

With regard to the first assignment of error, the defendant pleaded that decedent had an opportunity to "step out of the way," but the evidence introduced

on the motion for summary judgment showed no such opportunity. "[T]he purpose of a motion for summary judgment is to pierce the allegations of the pleadings and to show that the controlling facts are clear and that no genuine issue of fact remains for trial." Johnson v. Evers, 195 Neb. 426, 238 N. W. 2d 474.

The second and third assignments are discussed together. The testimony complained of is that given by Dr. Curtis Cramer, who identified himself as a full professor in the Department of Economics at the University of Wyoming, and as a doctor of philosophy, with a degree in economics and statistics from the University of Maryland. Dr. Cramer, using as a basis for his testimony the work record of the 59-year-old decedent for the past 20 years and his income records for the past 4 years, made a projection of the future earnings which the decedent could have been expected to have earned during a "work life expectancy" of 8.2 years and a remaining "life expectancy" of 17.1 years. In arriving at these several computations, the witness stated he did not reduce the projected figure for the possible burden of income taxes because, in this case, he had found that in spite of decedent's increased earnings during the past 4 years, his actual federal income tax paid had declined substantially because of decedent's use of a tax shelter plan. The witness did testify that the decedent's tax burden had been 9.7 percent over the past 4 years, but that to project the tax liability in the future would be too speculative in view of the availability "of tax loopholes and the ability to shelter certain types of projects."

Using the fact that in 1976 and 1977 the decedent had been granted 8 percent increases in salary and otherwise justifying the same, the witness further used an 8 percent salary increase factor in predicting the future earnings of the decedent, from a base wage of $11,321 for 11 months in 1977, to wages of

$20,564 in a predicted final year of full employment in 1984.

The jury was properly instructed by instruction No. 5, given in the general form contained in NJI No. 4.60, concerning the proper elements of pecuniary loss or damages applicable to the case, and was further instructed by instruction No. 12, given in the general form contained in NJI No. 14.55, concerning the weight of the evidence to be given to the testimony of the expert witness.

Factors constituting the different portions of an expert witness' computation of projected future damages or losses are not the subject of special instructions by the court, whether the same be projected tax liability or projected rate of pay increase based upon improved performance or upon a projected rate of inflation. This subject is discussed, with reference to the purchasing power of money, in Segebart v. Gregory, 160 Neb. 64, 69 N. W. 2d 315: "Juries have the right to take into consideration the purchasing power of money with respect to commodities that are in use by the public generally and may reasonably be said to constitute the necessaries of life. * * * From that it does not follow that a court is required to instruct on that subject matter. The value of money is a representative one. It is fixed by the value of the thing or things for which it can be exchanged. Whether that value has depreciated or appreciated with reference to some other period is not material. The value of money, i.e. its purchasing power, is elemental within the knowledge and experience of men generally. It is one of the facts of life which jurors are presumed to know. It is not error for failure to instruct relative to the purchasing power of money. It is not a proper subject for an instruction."

We think that prospective increases in wages that a worker might have merited had he lived, and his potential liability for income taxes, are likewise

proper matters to be covered in the evidence, but are not subjects for special instructions.

Defendant's fourth assignment of error raises the question of whether the verdict of the jury was based upon the influence of passion and prejudice. In this case we are dealing with the loss to the family of a wage earner who had pursued steady and gainful employment for his entire adult life and who had a life expectancy of 17.1 years. The decedent was in general good health at the time of the accident and it is for the jury to determine the amount of earnings loss. The evidence showed that he was a man of many skills in plumbing, carpentry, and the general ability to maintain and keep up his properties and those of his sons. He was frequently sought out by family members as both companion and counselor. The loss of services and companionship are likewise within the province of the jury to determine under proper instructions.

The verdict and judgment are sustained by sufficient evidence. We find no prejudicial error in the record and affirm the judgment.

AFFIRMED.