IRENE PALMA, APPELLANT, V. SHIRLEY ANN BARTA AND JOSEPH FRANK BARTA, JR., APPELLEES.

279 N. W. 2d 130

Filed May 22, 1979. No. 42058.

Daniel G. Dolan of Dolan, Dinsmore & Davis, for appellant.

J. Thomas Rowen of Miller & Rowen, for appellees.

Heard before KRIVOSHA, C. J., McCOWN, BRODKEY, and HASTINGS, JJ., and WHITEHEAD, District Judge.

BRODKEY, J.

Plaintiff below, Irene Palma, appeals to this court the verdict of the jury and judgment rendered thereon awarding her the sum of $4,000 as damages for injuries she received on October 28, 1976, in an intersection collision between an automobile driven by her husband, Victor Palma, and an automobile driven by the defendant, Shirley Ann Barta, owned and maintained by her husband, Joseph Frank Barta, Jr. We affirm.

At the conclusion of the evidence, the trial court sustained a motion by plaintiff's counsel for a directed verdict on the issue of defendants' negligence; and submitted to the jury only the issue of the amount of damages. The court instructed the jury that the burden was upon the plaintiff to prove by a preponderance of the evidence: "1. That the plaintiff sustained personal injuries and other damages resulting from said personal injuries. 2. That the accident was the proximate cause, or a proximately contributing cause of such injuries and damages. 3. The nature, extent and amount of the damages thus sustained by the plaintiff." As previously stated, the jury returned a verdict for the plaintiff in the sum of $4,000.

In her brief on appeal, plaintiff alleges as grounds for a new trial: (1) That the court erred in failing to grant plaintiff's motion for mistrial based upon the fact that during the selection of the jury one of

the jurors, Stanley Blakito, failed to admit on voir dire that a claim had been made against him in a personal injury action; (2) that the court erred in overruling an objection by plaintiff's counsel, and in denying plaintiff's motion for mistrial made subsequent thereto, on the basis of evidence elicited by defendants' counsel concerning plaintiff's gross-net income differences; (3) that the court erred in overruling an objection by plaintiff's counsel, and in denying the motion for mistrial made subsequent thereto, on the basis of introduction into evidence of plaintiff's income tax records, which reflected her gross earnings including sick pay benefits, in violation of the "collateral source" rule; (4) that the court erred in failing to convey to the jury supplemental instruction No. 1 in which the court informed the jury that it had stricken from the record and withdrawn from evidence the aforementioned income records, and directed the jury that they need not concern themselves with those exhibits nor with the reasons for their withdrawal from evidence; (5) that the court erred in failing to grant plaintiff's motion for mistrial at the conclusion of final argument because of improper and prejudicial remarks made by defendants' counsel; and (6) that the court failed to grant a new trial on its own motion because of the numerous errors in the record. It should be noted that the plaintiff has not specifically assigned as error that the amount of damages awarded her by the jury was inadequate; although she argues that issue at great length in her brief, pointing out that the award of the jury was less than one-half of the amount of the special damages she allegedly proved at the trial.

We discuss first plaintiff's contention that the court should have excused the juror, Stanley Blakito, who subsequently became foreman of the jury, because of his failure to correctly answer the inquiry put to him during voir dire with reference to any

claims which may have been made agaist him in a personal injury action. It appears that the accident which the juror neglected to discuss had occurred some 20 years prior to the accident involved in the instant case, and that the juror had voluntarily advised the court of that fact before the commencement of the trial, when he recollected the incident. The court voluntarily informed counsel for both parties of that fact, stating: ''Let the record show that prior to the beginning of the trial this morning I have advised counsel here in chambers that a juror, Stanley Blakito, approached me outside of the courtroom and advised me that as he was driving home last night he remembered an accident that he had in the 1950's that he had not brought up in response to voir dire examination yesterday; that he was driving an automobile for his employer, and that after the accident he learned that a lady in the other car was making a claim for personal injuries against both himself and his employer. He does not know whether the claim ripened into a law suit or not. He says that that is the last he has heard of it. He told me, in response to my asking him, that he could set the matter aside and pay no attention to it, as far as his ability to decide the issues of this case.'' At that time, the trial court offered to allow counsel for both sides to examine the juror further as to the matter in question, but that offer was refused by both counsel. In response to a question of the defendant as to whether the juror was actually a defendant in the previous court action, the court stated that Blakito told him he was involved in an accident and learned through his employer that a lady had made a claim for injuries, but he didn't know whether or not it had ripened into a lawsuit and that was the last he heard about it. Plaintiff argues, however, that to remove the juror in question would have required her to use one of her peremptory challenges. She did not do so. Under the facts revealed in the record, and par-

ticularly in view of the statement of the juror that he could render a fair and impartial judgment in the matter, and also because of the fact that the incident in question occurred at a point in time remote from the accident in the instant case, we conclude that no prejudice resulted to the plaintiff which would warrant the sustaining of a motion for mistrial.

Plaintiff's second and third assignments of error will be discussed together, as they both involve the admission of evidence during the trial, over objection of plaintiff's counsel, where the trial judge subsequently changed his mind, ordered the evidence striken from the record, and instructed the jury to disregard it. Plaintiff testified on direct examination with reference to loss of wages or income from Western Electric, her employer, which she claims resulted from the injuries she sustained in the accident. She testified that prior to the accident in question she was receiving $4.80 per hour plus "incentive payments" in a fluctuating amount. On cross-examination, counsel for the defendants inquired with reference to her general take-home pay during that period. Plaintiff's counsel interposed an objection based upon immateriality, irrelevancy, and incompetency, which objection was overruled; and the plaintiff was allowed to testify as to the amount of her gross and net pay. The court subsequently recognized its error and vacated its previous ruling regarding the admission of the testimony, and admonished the jury as follows: "Let me state for the record, ladies and gentlemen of the jury, that with regard to previous evidence concerning the plaintiff's wages and evidence that was admitted concerning the amount of her net earnings, or take home pay, so to speak, I previously overruled an objection made by the plaintiff to that evidence. I have reconsidered that ruling, and I am vacating that ruling, and I am sustaining the objection made; and therefore, must now strike from the record all

such evidence that was offered and received on that point. So that evidence is stricken from the record and, as I will later instruct you in writing, you must disregard that evidence that has been stricken." Furthermore, in its instructions to the jury, the court stated: "In determining any questions of fact presented in this case, you should be governed solely by the evidence introduced before you. You should not indulge in speculation, conjectures, or inferences not supported by the evidence. *You should not consider any evidence which has been stricken from the record*; you should not be influenced by statements of counsel not supported by evidence." (Emphasis supplied.) In Danner v. Walters, 154 Neb. 506, 48 N. W. 2d 635 (1951), we stated: "Where evidence improperly received is afterwards stricken out and expressly withdrawn from the consideration of the jury, the error involved in its reception is ordinarily cured." We conclude that plaintiff's claim of reversible error by the action of the court in the above matter is without merit.

Plaintiff's third assignment of error involves the admission by the court into evidence of exhibits 21, 22, and 23, which were the Federal and State of Nebraska income tax returns of the plaintiff covering the years 1977, 1976, and 1975, respectively. Plaintiff contends that since those returns include, in the total of the income received by her during the years in question, sick pay benefits paid to her by her employer, the introduction of those records violated the "collateral source rule" and resulted in prejudicial error to her. Plaintiff's counsel objected to the introduction of those exhibits on the general ground that they were immaterial, but subsequently changed the basis of the objection to include the collateral source rule. There is no clear evidence in the record that the exhibits were ever seen or inspected by the jury. The question of the admissibility of the income tax statements was argued at length by both

counsel, following which the trial court vacated its previous ruling and sustained the motion of the plaintiff to withdraw the exhibits from evidence, stating: "I agree with you, I sustained your motion, I'm going to have to give them a supplemental instruction. Mr. Rowen: You are going to give them another instruction in that regard? The Court: Just that I am withdrawing these three exhibits, just so they won't be wondering where they are at. Mr. Dolan: Are you going to instruct them to disregard those exhibits? The Court: I will dictate it right now. Supplemental Instruction No. 1: The Court has withdrawn from evidence Exhibits 21, 22 and 23; therefore, you need not concern yourselves with those exhibits, nor should you concern yourselves with the reasons for their withdrawal from evidence.

"Would you gentlemen be interested in waiving the reading of that supplemental instruction in open court? Mr. Dolan: Yes. Mr. Rowen: Yes, I am agreeable to that." The court's trial docket entry for Wednesday, February 8, 1978, also contains the following notation: "Before Exhibits #21, 22, and 23 are given to jury, supplemental Instruction No. 1 is submitted to jury; parties having waived reading of instruction to jury in open court." Also in the court's written order following argument of plaintiff's motion for a new trial, he states as follows: "In addition, however, the income tax returns referred to were never shown to the jury, the court having decided that the returns should not be admitted into evidence, and thereupon by supplemental instruction No. 1 given to the jury, withdrew those exhibits from their consideration. Again, the jury was instructed in written instruction No. 1 not to be influenced by statements of counsel not supported by evidence." The court, in its order, also found: "The withdrawal of the exhibits and the supplemental instruction to the jury adequately corrected any error in their admission."

In her fourth assignment of error, however, plaintiff contends that the court erred in failing to convey to the jury supplemental instruction No. 1, above referred to, which informed the jury that the court was withdrawing the income tax records from evidence and instructing the jury to disregard them. Plaintiff argues in her brief that it is very questionable whether the jury did receive supplemental instruction No. 1, and also that the jury probably did review the income tax returns. A subsequent hearing was held by the court to determine from the testimony of those involved whether supplemental instruction No. 1 was, in fact, ever actually delivered to the jury. A review of the testimony given at that hearing convinces us that the instruction in question was undoubtedly given them. The court administrator for the Fourth Judicial District testified that on the day in question he recalled a meeting in chambers between the judge and counsel with regard to exhibits 21, 22, and 23, the tax records, and that at that time the judge prepared a supplemental instruction, which was given to him by the court reporter. He took the instruction to the clerk's office, filed it, returned it for checking, and then gave it to the temporary bailiff, Kathy Severson; and that he watched the bailiff take it into the jury room pursuant to his instructions. He did not, however, see her physically hand it to the jury, but saw her go to the jury room and come back without it. The temporary bailiff, Kathy Severson, also testified that she received the supplemental instruction with directions to transmit it to the jury. She was asked: "Do you remember who you handed it to?" and she replied: "I went in and I just laid it on the table in there. I didn't hand it to anybody specifically, you know. I knocked on the door and I went in and I set it on the table, you know. I didn't hand it to anyone." She was then asked if she said anything when she did that, and replied: "I believe I said that this

instruction would explain the exhibits they did not have, or something that they were questioning. I don't recall my exact words. Something to that effect." Stanley Blakito, the foreman of the jury, was also called as a witness and testified as follows with reference to what transpired at that time: "Q. I want to ask you this: Do you recall, though, calling out and asking for the income tax returns, sending a note out? A. Calling out? Q. Sending a note out by way of the bailiff saying, 'Where are the income tax returns?' Do you recall that happening? A. Yes. I think, ya, come to think of that, I think we asked for the latest ones. There was some old ones from way back, and we asked for the new ones, the latest ones, and there wasn't. Q. Do you recall then after sending that note out that the bailiff then brought you back an instruction instructing you to disregard that? A. That's right. And then we referred * * * back to, the other stuff. We came out once into the courtroom and we were having instructions, and we went back in there, and as we sat in there we were going through the whole case, and then we came up, one thing, so we wrote a note and had it come out to see if we could get some clarification on that matter. Then we didn't get nothing back. We got a note back just to review the evidence that we had on our table. Q. What I'm talking about, initially, after you retired, right after the instructions were read to you, do you remember sending the note out asking for the tax returns, right after you retired? A. Well, to answer your question, I believe the note that went out was asking, like I stated, was for the latest years, which would have been probably '77 or '76. Q. Then do you remember after you sent that note out that the bailiff brought you back an instruction or a piece of paper or note or something telling you to disregard the tax returns? A. Yes. We were told just to go back and refer to our list of stuff that we had from the

Judge on our sheets. Q. You do recall that occurring? A. Yes." It seems clear from Mr. Blakito's testimony that during the deliberations of the jury, supplemental instruction No. 1, directing the jury to disregard the tax returns, was delivered to them. Plaintiff's fourth assignment of error is without merit.

Plaintiff's fifth assignment of error is that the court should have granted plaintiff's motion for mistrial at the conclusion of the final arguments because of improper and prejudicial remarks made by defendants' counsel. Plaintiff argues that defendants' counsel stated to the jury that the reason we are here is because we couldn't get the case "settled." Recollection of the incident by defendants' counsel was that his comments were "[W]e had a dispute which we cannot resolve," and he did not recall using the word "settle." The trial court stated his recollection of the incident as follows: "On the motion for mistrial, my recollection is that Mr. Rowen did state to the jury, 'We try to settle these cases,' or might have said, 'We tried to settle this case.' He did use the [word] 'settle' in my recollection. Objection was made promptly by plaintiff, and I stated to the jury, to the best of my recollection, that efforts to resolve issues — I deliberately avoided the use of the word 'settle,' I always do, as a matter of fact, telling the jury the case is 'settled.' 'Attempts to resolve issues are irrelevant to this trial and the objection is sustained,' I believe those are almost identically my words.

"The objection was timely made, the jury was told the objection was sustained, and I don't believe I told them to disregard the comment, but I don't believe with that objection made and the sustaining of the objection that there was any prejudicial error at that point. The motion is overruled." In view of the court's action in sustaining the objection at that time, we do not believe prejudicial error resulted.

Finally, plaintiff argues that although the individual errors allegedly committed by the trial court may not, standing alone, be sufficient to warrant a new trial, yet a collection of individual errors can accumulate to result in prejudice to the complaining party such that a new trial is proper. She cites in support of this proposition Faught v. Washam, 329 S. W. 2d 588 (Mo., 1959). While it is possible that some jurisdictions have adopted the rule advanced by plaintiff, we do not find that the State of Nebraska has ever done so, nor has our attention been directed to any Nebraska cases so holding. While it is possible that the proposed rule may, under certain circumstances, have a salutary effect, yet we do not see that the facts of the present case present such a situation. Although the plaintiff has alleged numerous assignments of error, we do not believe that the number of assignments alleged is controlling. We have not found merit in any of the assignments of error alleged to the extent, even considered collectively, they would warrant a new trial. We believe the record in this case amply sustains the conclusion that no prejudicial error resulted to the plaintiff.

Although not specifically assigned as error, we discuss one further matter, as it appears that in reality the substance of all of plaintiff's contentions and claims of error is in fact based upon her contention that the verdict of the jury in this case was inadequate. She points out that the damages awarded her in the amount of $4,000 is less than one-half of the amount of her claimed special damages; and therefore argues that she is entitled to a new trial because of that fact. She contends that her evidence established lost wages in the amount of $7,606 and medical expense of $1,506 or total special items of damage amounting to over $9,000. The record does not contain an itemized explanation by plaintiff as to how she computed her lost wages in the amount of

$7,600, but her counsel did admit he argued to the jury that plaintiff sustained lost wages in that amount as the result of the accident. In this connection, plaintiff contends defendants' counsel, in his final argument to the jury, made reference to the income tax records of the plaintiff and instructed the jury to "* * * look in there to see if you can find a loss of $7,600." However, since the tax records referred to were withdrawn from evidence by the court and the jury was instructed to disregard them, we conclude the error, if any, was not prejudicial.

Notwithstanding the above, we believe it is clear there is ample evidence in the record to justify the verdict of the jury in the amount of $4,000. The record is replete with evidence, including hospital records and medical records of plaintiff's employer, showing that plaintiff had experienced the same or similar medical problems for several years prior to the accident in question, and had an extensive history of prior medical problems, including chronic backaches, and pain in the upper neck and right arm. We, of course, do not know what motivated the jury to bring back a verdict in the amount they did, as their discussions and reasons inhere in the verdict itself and may not be inquired into. We note, however, the court did instruct the jury that one of the elements they must find, before the jury could assess damages in favor of the plaintiff, was that the defendant's negligence was the proximate cause of the damages to plaintiff. It is altogether possible, in view of the plaintiff's past history of medical problems, the jury concluded that not all of her personal injuries and medical expenses were the proximate result of the accident in question, and may have reduced the size of their verdict as the result thereof. Evidence of doctors in the record indicates the injury suffered by plaintiff, described as a cervical sprain, was a soft tissue injury, not unlike a sprained ankle; and there was no permanent dis-

ability involved. X-ray and myelogram films showed no evidence of any abnormality. The jury could have concluded that even if plaintiff did incur the medical expense and was absent from work for the length of time claimed, the loss was not reasonably necessary as the result of the injury sustained. The rule is well-established that triers of fact are not required to accept as absolute verity every statement of witnesses not contradicted by direct evidence, and the persuasiveness of evidence may be destroyed even though not contradicted by direct evidence. Magdaleno v. Nebraska Panhandle Community Action Agency, 195 Neb. 783, 241 N. W. 2d 114 (1976); K & R, Inc. v. Crete Storage Corp., 194 Neb. 138, 231 N. W. 2d 110 (1975). The rule is likewise well-established that a verdict will not be set aside as inadequate unless it is clearly against the weight and reasonableness of the evidence and is so disproportionate to the injury proved as to indicate that it was the result of passion, prejudice, mistake, or some other means not apparent in the record, or that the jury disregarded the evidence or rules of law. Cover v. Platte Valley Public Power and Irr. Dist., 173 Neb. 751, 115 N. W. 2d 133 (1962); Schweitz v. Robatham, 194 Neb. 668, 234 N. W. 2d 834 (1975). This court cannot say that the verdict was clearly against the weight of the evidence presented to it, nor that it indicated that the verdict resulted from passion, prejudice, or mistake.

Finding no reversible error in the record, the verdict of the jury and the judgment of the trial court must be affirmed.

AFFIRMED.