TILLIE KRUG, MOTHER AND NEXT FRIEND OF
JESSIE FRANK KRUG, A MINOR, AND TILLIE KRUG,
INDIVIDUALLY, APPELLEES, V.
DALE THURSTON LAUGHLIN, APPELLANT.

303 N.W.2d 311

Filed March 20, 1981.  No. 43322.

Jeffrey A. Silver for appellant.

David L. Herzog and George W. Rubagumya for appellees.

Heard before BOSLAUGH and WHITE, JJ., and RONIN, KELLY, and BARTU, District Judges.

BARTU, District Judge.

This appeal is taken from jury verdicts and judgments thereon in a negligence action resulting from an automobile-motorcycle accident at the intersection of 36th and Q Streets in Omaha, Nebraska, on June 16, 1979. Jessie Frank Krug was awarded judgment of $12,866.20 and Tillie Krug, his mother, was awarded judgment of $7,133.80 against Dale Thurston Laughlin. The issues of negligence, contributory negligence, and damages were tried to the jury.

Appellant makes two assignments of error: (1) The verdicts and judgments are not supported by the evidence; and (2) The trial court erred by overruling defendant's motions for directed verdicts upon prima facie negligence and/or plaintiff's contributory negligence at the close of plaintiffs' case and again at the close of defendant's case.

The collision occurred on the 16th day of June 1979 at the intersection of 36th and Q Streets in Omaha, Nebraska. Jessie Krug and a fellow employee, Wilbur Driscoll, had just left work and were riding their motorcycles eastbound on Q Street. They rode side by side most of the way until they came close to the intersection when Driscoll fell in behind Krug in the curb lane.

The intersection has no special turning lanes for either of the streets. A vehicle intending to turn through

the intersection must use the lane closest to the center-line. As they approached the intersection at 30 to 35 miles per hour, Driscoll saw that the traffic light was green. The speed limit on Q Street is 35 miles per hour. At the time Krug was about 3 or 4 feet from the inter-section, Driscoll saw a 1973 Chevrolet vehicle driven by the defendant start to turn left to go south on 36th Street from a westbound direction on Q Street. Driscoll saw Krug react to Laughlin's turn by attempting to turn his motorcycle to the left so as to avoid the collision. Dris-coll was following close enough behind Krug that the immediacy of the accident caused him to ride over Krug's motorcycle tire after its collision with Laugh-lin's vehicle.

Krug testified that the only things he remembers prior to and after the accident are that he knew the traffic light was green and that he was traveling at about 34 miles per hour immediately prior to the collision.

As Laughlin approached the intersection, the light was red and he stopped, intending to make a left turn when the light turned green. As the light changed he observed two vehicles traveling east on Q Street in the curb lane. He allowed the eastbound vehicles to go through and then proceeded into the intersection com-mencing his left-hand turn. As he started to turn left he noticed the motorcycles approaching at a distance he estimated to be a block. He only looked at the motor-cycles once as he began his turning maneuver. He made his turn at a speed of about 3 to 4 miles per hour and there were no pedestrians in the intersection to whom he had to yield the right-of-way. From the time he started to turn left to the time of impact took about 4 seconds.

At the time of the accident, Laughlin suffered with binocularity eyesight disability.

Laughlin's wife, a passenger in the vehicle driven by her husband, saw the motorcycles at about a block's distance side by side as they approached the intersec-

tion. She did not warn her husband about the rapid approach of the motorcycles, and she testified that the plaintiff and Driscoll were riding side by side at impact.

After the collision Laughlin's vehicle was facing southwest and had little or no movement after impact.

Gregory Hoffman, an Omaha police officer, observed the defendant's 1973 Chevrolet facing a southwesterly direction in the intersection with the plaintiff's motorcycle resting up against its right rear quarter panel as he arrived at the accident scene. The defendant advised Hoffman that he was westbound on Q Street, stopped at the intersection of 36th and Q Streets until the light turned green, let several vehicles go by, observed a motorcycle about a block away, activated his turn signal, and was making his turn when struck in the rear by plaintiff. Hoffman's investigation determined that the left-turn signal on the defendant's vehicle was operational.

Robert Scott, an accident reconstruction expert, testified that in his opinion plaintiff's motorcycle was traveling 52.8 miles per hour immediately prior to impact.

As a result of the accident, plaintiff Jessie Krug suffered bodily injury for which he was hospitalized, reasonably requiring medical expense of more than $7,000. He was permanently scarred and disabled, has undergone a personality change, and is presently unable to hold a steady job because of lack of concentration and drive.

It is obvious from the testimony that the accident was perceived differently by Krug, Driscoll, Laughlin, Laughlin's wife, and by Scott, all of whom were reasonable people drawing different conclusions.

At plaintiffs' rest and at the close of the case, defendant, in substance, moved alternative motions for directed verdicts — one, a motion for a directed verdict of dismissal of plaintiffs' causes of action for failure to prove a prima facie negligence; and two, for a directed verdict against the plaintiff Jessie Krug because of

negligence greater than slight by him when compared to the negligence by the defendant. The trial court overruled and denied both motions.

We affirm the verdicts and judgments thereon on the following principles.

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Woodsmall v. Marijo, Inc.*, 206 Neb. 405, 293 N.W.2d 378 (1980); *Foremost Ins. Co. v. Allied Financial Services, Inc.*, 205 Neb. 153, 286 N.W.2d 740 (1980); *Stevens v. Kasik*, 201 Neb. 338, 267 N.W.2d 533 (1978); *Garcia v. Howard*, 200 Neb. 57, 262 N.W.2d 190 (1978); *McCready v. Al Eighmy Dodge*, 197 Neb. 684, 250 N.W.2d 640 (1977).

To test the evidence for a jury question, the trial court must resolve every controverted fact in favor of the party against whom a verdict is sought and give that party the benefit of every inference which can reasonably be drawn from the evidence presented. *Novotny v. McClintick*, 206 Neb. 99, 291 N.W.2d 252 (1980); *Foremost Ins. Co. v. Allied Financial Services, Inc., supra; Woodsmall v. Marijo, Inc., supra; Simet v. Sage, ante* p. 13, 301 N.W.2d 600 (1981).

Granting the plaintiffs every reasonable inference which can reasonably be drawn from the evidence presented above and resolving every controverted fact presented by the evidence in plaintiffs' favor, it is readily apparent that the plaintiffs established prima facie cases of negligence on the part of the defendant by showing that the defendant failed to yield the right-of-way to the motorcycle being driven by Jessie Krug, making a left-hand turn at the intersection when Krug's motorcycle was 3 or 4 feet from the intersection, in violation of Neb. Rev. Stat. § 39-636 (Reissue 1978), and by failing to keep a proper lookout by failing to see what he should have seen, to wit, the motorcycle 3 or 4 feet from the intersection at the time he executed his left-hand turning maneuver.

For purposes of a motion for a directed verdict, plaintiffs established prima facie cases of negligence against the defendant.

Using the same standards to test the evidence with regard to defendant's alternative motion, reasonable persons could differ as to whether plaintiff's negligence was greater than slight when compared with that of the defendant. The trial court was correct in overruling the alternative motion to direct the verdict and by submitting the matter to the jury pursuant to Neb. Rev. Stat. § 25-1151 (Reissue 1979), which provides in part: "In all actions brought to recover damages for injuries to a person or to his property . . . all questions of negligence . . . and contributory negligence shall be for the jury." Appellant makes no written or oral argument that the jury verdicts were excessive, but there is ample evidence in the record to support the award. A jury verdict will not be disturbed unless it is clearly erroneous and against the preponderance of the evidence. *Hayes v. Anderson Concrete Co., Inc.*, 186 Neb. 771, 186 N.W.2d 477 (1971); *Lintner v. Roos*, 202 Neb. 476, 276 N.W.2d 93 (1979); *Hartman v. Brady*, 201 Neb. 558, 270 N.W.2d 909 (1978).

Appellant complains in his brief that plaintiffs failed to establish prima facie proximate cause. No such issue was raised at trial or by the motion for new trial. We do not consider it here.

The jury verdicts and judgments thereon should be and are affirmed.

AFFIRMED.

KELLY, District Judge, concurs in result.