Vernetta Maricle, appellee and appellant, v.
Richard A. Spiegel, doing business as Spiegel Oil
Company, et al., appellants and appellees,
Mobil Oil Corporation, a corporation, appellee.
329 N.W.2d 80

Filed January 7, 1983.    No. 44283.

Jewell, Otte, Gatz & Collins, for appellants and appellees Spiegel.

Robert P. Chaloupka of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellee and appellant Maricle.

Timothy J. Pugh of Boland, Mullin & Walsh, for appellee Mobil Oil.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

These cases arose out of an automobile accident which occurred on August 2, 1979, in Boone County, Nebraska. Chip Maricle was severely injured when his pickup truck collided at a rural intersection with a Mobil tank truck owned by the defendant Richard A. Spiegel and driven by the defendant Rick A. Spiegel. An action was brought by Vernetta Maricle as guardian and conservator of Chip Maricle to recover damages for his personal injuries. A separate action was brought by Vernetta Maricle as the wife of Chip Maricle for loss of consortium and personal damages she suffered as a result of the injuries to her husband. The actions were consolidated for trial and have been docketed in this court as one appeal.

The jury could find that the accident occurred when Rick A. Spiegel, in the course of his employment, failed to stop the westbound truck at a stop sign before entering the intersection. The pickup driven by Maricle was southbound and had the right-of-way. There was conflicting evidence with regard to the speed of the Maricle vehicle. Both eyewitness and expert testimony was admitted on the issue. There was also conflicting evidence as to the founda-

tion upon which the expert testimony was based, most notably the presence or absence of skid marks caused by the Maricle vehicle.

Plaintiff also sought recovery for Chip Maricle's injuries against Mobil Oil Corporation.

The case was submitted to the jury upon issues of negligence and contributory negligence. The jury returned a verdict in the amount of $1,500,000 for the personal injuries of Chip Maricle, and $200,000 to Vernetta Maricle for her damages. The jury returned a verdict in favor of Mobil Oil Corporation.

The defendants (Spiegel) appealed, and the plaintiff appeals from the judgment in favor of Mobil. Although the plaintiff has denominated her appeal as a cross-appeal, since she filed notices of appeal, the matter will be treated as an appeal. The plaintiff and Mobil are appellees and an appellee can not cross-appeal against another appellee. *Buffalo County v. Richards,* 212 Neb. 826, 326 N.W.2d 179 (1982); *Hansen v. Hasenkamp,* 192 Neb. 530, 223 N.W.2d 44 (1974).

Spiegel assigns as error the trial court's overruling of a motion to amend defendants' answer to conform to the proof, to include the defense of "last clear chance." Spiegel argues that Maricle had the last clear chance to avoid the accident. Neb. Rev. Stat. § 25-852 (Reissue 1979) permits the court, in furtherance of justice, to amend the pleadings to conform to the proof. The decision to allow or deny an amendment lies within the discretion of the trial court. *Mahoney v. May,* 207 Neb. 187, 297 N.W.2d 157 (1980).

Generally, last clear chance has been described as: "[T]he rule implies that one charged with negligence knew the person injured was in a place of danger and negligently failed to avoid injuring him. . . .

. . . .

"The doctrine . . . applies where there is negligence of the defendant subsequent to the negligence

of the plaintiff and the defendant's negligence is the proximate cause of the injury." *Parsons v. Berry,* 130 Neb. 264, 267-68, 264 N.W. 742, 744 (1936). See, *Roby v. Auker,* 149 Neb. 734, 32 N.W.2d 491 (1948); *Loudy v. Union P. R. R. Co.,* 146 Neb. 676, 21 N.W.2d 431 (1946); *Malcom v. Dox,* 169 Neb. 539, 100 N.W.2d 538 (1960).

A more detailed definition is given in *Bush v. James,* 152 Neb. 189, 195, 40 N.W.2d 667, 672 (1950): "We said, in Carter v. Zdan, 151 Neb. 185, 36 N.W.2d 781: 'In order to recover under the doctrine of last clear chance there must be sufficient evidence to sustain a finding that the party invoking the doctrine was by his own negligence immediately before the accident in a position of peril from which he could not escape by the exercise of ordinary care; that the party against whom it is asserted knew or ought to have known of the other's peril; that the party against whom the doctrine is invoked had the present ability with the means at hand to avoid the accident without injury to himself or others; that the failure to avoid the accident was due to a want of ordinary care on the part of the person against whom the doctrine is invoked and that such want of ordinary care was the proximate cause of the accident; and that the negligence of the party imperiled is neither active nor a contributing factor in the accident. * * * The doctrine has no application unless the person claiming its benefit puts himself in the position of admitting that immediately before the accident he found himself in a place of peril through his own negligence from which he could not escape by the exercise of ordinary care.' "

Prosser describes "last clear chance" as the "most commonly accepted modification of the strict rule of contributory negligence." He states that the doctrine worked well in the older-day attempt to fix liability upon the "last human wrongdoer," but that it is out of line with modern concepts of proximate cause. He adds that a few courts have attempted to

recognize a last clear chance in favor of the defendant, "but since this comes out at exactly the same place as the defense of contributory negligence without the doctrine at all, and is calculated only to bewilder the jury with incomprehensible instructions, most courts have rejected any such idea." W. Prosser, Law of Torts, *Negligence: Defenses* § 66 at 427-29 (4th ed. 1971). See, also, Annot., 32 A.L.R.2d 543 (1953).

It was not an abuse of discretion for the trial court to overrule the motion to amend the pleadings. See *Rawlings v. Andersen*, 195 Neb. 686, 240 N.W.2d 568 (1976). Last clear chance is applicable only to excuse the contributory negligence of the plaintiff. To permit defendant to raise it as a defense would permit him to place the issue of contributory negligence before the jury in two different ways and confuse the jury. See, e.g., *Ballard v. Rickabaugh Orchards, Inc.*, 259 Or. 200, 485 P.2d 1080 (1971).

Furthermore, the doctrine of last clear chance is factually inapplicable, as the negligence of the party seeking to invoke it was active and continuing as a contributing factor up to the time of injury. See *Roby v. Auker, supra.*

Spiegel next argues that the trial court's overruling of his motion in limine and the admission and exclusion of certain evidence was prejudicial and deprived Spiegel of having a fair trial.

Plaintiff sought to introduce evidence concerning Maricle's safe driving habits. The defendants' objection was sustained. The defendants can not predicate error on the denial of the motion in limine when the objection to the evidence was sustained.

Spiegel made a motion to exclude evidence of the speed of the Maricle vehicle 1 mile from the site and evidence of Maricle's safe driving habits. Generally, a proper objection to the receipt of evidence is required to preserve for review any error in the overruling of a motion in limine. See, *Twyford v.*

*Weber*, 220 N.W.2d 919 (Iowa 1974); *Vorthman v. Keith E. Myers Enterprises,* 296 N.W.2d 772 (Iowa 1980); Annot., 63 A.L.R.3d 311 (1975).

Spiegel objected on the basis of relevancy to the admission of eyewitness testimony that Maricle's speed was 35-40 m.p.h. 1 mile from the intersection. The objection was overruled. The admissibility of the speed of a vehicle shortly before a collision rests largely in the discretion of the trial court. *Schwarting v. Ogram,* 123 Neb. 76, 242 N.W. 273 (1932). However, this rule of discretion generally does not permit admission unless there can be drawn a reasonable inference that the speed continued until impact (if points are of close proximity) or there is evidence from which such inference could be drawn (if points are more remote). *Prince v. Petersen,* 144 Neb. 134, 12 N.W.2d 704 (1944); *Shields v. County of Buffalo,* 161 Neb. 34, 71 N.W.2d 701 (1955); *Sandrock v. Taylor,* 185 Neb. 106, 174 N.W.2d 186 (1970).

In the present case there is evidence from which a reasonable inference of continued speed to the point of impact could be drawn. Those factors are the age and type of vehicle driven by Maricle, the distance the witness observed the vehicle (2 blocks), and the presence of a ½-mile uphill grade north of the intersection. The accident reconstruction expert called by the plaintiff in rebuttal testified that the information as to the speed of the Maricle vehicle 1 mile from the intersection was important. Under the circumstances in this case the evidence was properly admitted.

Spiegel argues that the admission of expert testimony regarding speed offered by the plaintiff on rebuttal amounted to an abuse of discretion. The plaintiff attempted to introduce expert testimony that the speed of the Maricle vehicle could not have increased dramatically from the point it was observed by the witness to the point of impact, due to the uphill grade. The expert based his opinion on a test drive performed with his own car. Spiegel's

first objection to the opinion was overruled. However, when the expert testified as to the basis for his opinion, Spiegel's objection was sustained, the testimony was ordered stricken, and the jury was instructed to disregard the testimony. Any error which may have occurred in the admission of this testimony was cured by striking it and instructing the jury. See *Palma v. Barta,* 203 Neb. 459, 279 N.W.2d 130 (1979).

Spiegel next assigns as error the admission of several photographs as being prejudicial and cumulative. Photos of Maricle in his hospital bed and of Maricle before and after the accident, together with the family, are at issue. Maricle argues that the photos were relevant evidence of the deterioration in his physical condition. " 'The admission or rejection of photographs in evidence is largely within the discretion of the trial court. In the absence of a showing of an abuse of discretion, error may not be predicated upon such ruling.' " *Rowedder v. Rose,* 188 Neb. 664, 669, 199 N.W.2d 18, 21 (1972), quoting *Peterson v. Skiles,* 173 Neb. 470, 113 N.W.2d 628 (1962).

In *Schmailzl v. State,* 176 Neb. 617, 126 N.W.2d 821 (1964), the issue was similar to the one presented here. The court said: "The State assigns as error the introduction of certain family photographs, contending that their purpose was to arouse the sympathy of the jury. . . .

"The photographs offered, while taken for family purposes, did have probative value. . . . The trial court did not abuse its discretion in admitting the photographs. They are within the ambit of the rule announced in Anderson v. Evans, 164 Neb. 599, 83 N.W.2d 59: 'The possibility that the photographs might have a tendency to create sympathy in favor of one party should not render them inadmissible as proof of an issue on the trial.' " *Id.* at 623-24, 126 N.W.2d at 825.

On cross-examination of a doctor and the ambu-

lance driver, Spiegel attempted to inquire into the use or nonuse of a seatbelt and the effect that it would have had on Maricle's injuries. No evidence had been received regarding the presence of a seatbelt and, if so, whether Maricle had used it. Objections to the questions were sustained. Spiegel argues on appeal that the use of seatbelts is relevant to the issue of mitigation of damages and the evidence was wrongfully excluded.

There are no Nebraska cases regarding the pleading of mitigation of damages. In the following cases mitigation of damages was held to be an affirmative defense, required to be set forth in the pleadings. *Consolidated Mtg. & Finance Corp. v. Landrieu,* 493 F. Supp. 1284 (D.D.C. 1980); *Toushin v. Gonsky,* 77 Ill. App. 3d 508, 395 N.E.2d 1124 (1979); *Iowa Power & Light Co. v. Bd. of Water Works, Etc.,* 281 N.W.2d 827 (Iowa App. 1979); *Peeples v. Sargent,* 77 Wis. 2d 612, 253 N.W.2d 459 (1977); *Sprecher v. Weston's Bar, Inc.,* 78 Wis. 2d 26, 253 N.W.2d 493 (1977). Spiegel's failure to plead waives the defense.

Some courts have found that failure to use a seatbelt presents a question as to whether the plaintiff used due care. See, e.g., *Truman v. Vargas,* 275 Cal. App. 2d 976, 80 Cal. Rptr. 373 (1969). Recent cases include *Brodvin v. Hertz Corp.,* 487 F. Supp. 1336 (S.D.N.Y. 1980), in which the court held that nonuse of a seatbelt "can be considered by a jury in determining whether the plaintiff in an accident case exercised due care to avoid or mitigate injury to himself." *Id.* at 1338. These cases indicate that failure to use a seatbelt is relevant to the issue of due care, and thus to the issue of contributory negligence. In Spiegel's answer, specific acts of contributory negligence were enumerated, but failure to use a seatbelt was not alleged. " 'A recovery cannot be had for acts of negligence not alleged in the petition. The rule is the allegata and probata must agree.' " *Edmunds v. Ripley,* 172 Neb. 797, 808, 112

N.W.2d 385, 392 (1961); *Lund v. Holbrook,* 153 Neb. 706, 46 N.W.2d 130 (1951).

Spiegel assigns as error the rejection of the offer of proof as to the tax consequences of a personal injury damages award. He relies on *Ott v. Frank,* 202 Neb. 820, 277 N.W.2d 251 (1979), as standing for the proposition that such tax consequences may be brought out in evidence. The case does not support his contention, but merely permits inquiry into the projected tax liability of the decedent, had he lived, when computing damages in a wrongful death action.

Generally, the courts have taken three positions on the admissibility of tax liability for personal injury awards. The majority position is that tax savings should not be deducted and that the jury should not be instructed with regard to taxes. A second position is that to fail to permit reduction due to tax savings overcompensates the plaintiff. A third approach finds the evidence relevant on a case-by-case basis. See D. Dobbs, Remedies § 8-8 (1973).

There are no Nebraska cases on the issue. A recent case finding such evidence inadmissible is *Eriksen v. Boyer,* 225 N.W.2d 66 (N.D. 1974). The court said at 73-74: "Boyer asserts that the court erred in refusing to give a requested instruction to the effect that damages awarded to the plaintiff are not taxable to him as income. We hold that the court was clearly correct in refusing the instruction. We adhere to the majority rule that it is improper to instruct the jury that an award of damages is not subject to income tax and that such tax should not be considered in fixing the amount of damages. . . . We agree with the statement of the Illinois Supreme Court in Hall v. Chicago & North Western Ry. Co., 5 Ill. 2d 135, 151, 125 N.E.2d 77, 86 (1955):

" 'It is a general principle of law that in the trial of a lawsuit the status of the parties is immaterial. Thus, what the plaintiff does with an award, or how

the defendant acquires the money with which to pay the award, is of no concern to the court or jury. Similarly, whether the plaintiff has to pay a tax on the award is a matter that concerns only the plaintiff and the government. The tortfeasor has no interest in such question. And if the jury were to mitigate the damages of the plaintiff by reason of the income tax exemption accorded him, then the very Congressional intent of the income tax law to give an injured party a tax benefit would be nullified.

. . . .

" 'We are of the opinion that the incident of taxation is not a proper factor for a jury's consideration, imparted either by oral argument or written instruction. It introduces an extraneous subject, giving rise to conjecture and speculation.' "

The offer of proof was properly rejected.

Spiegel's final assignment of error is that the verdict was excessive. The rule in Nebraska is that a verdict will not be set aside unless it is against the weight of the evidence, or appears to have been the result of passion, prejudice, mistake, or disregard of the rules of evidence or the law. *Palma v. Barta,* 203 Neb. 459, 279 N.W.2d 130 (1979); *Caradori v. Fitch,* 200 Neb. 186, 263 N.W.2d 649 (1978).

Chip Maricle was 32 years of age at the time of the accident. He was married and had two children. He was engaged in a farming partnership with his father. His average annual income from 1978 to 1980 was in excess of $37,000. He is permanently totally disabled as a result of his injuries and is presently confined to a nursing home. The damages awarded totaled $1,700,000. There was evidence that Maricle's loss of income and medical expenses alone will amount to $1,540,586.14. As we view the record, the verdict was not excessive.

Maricle appeals from the judgment in favor of Mobil, arguing that the verdict was against the weight of the evidence. A jury verdict will not be disturbed on appeal unless it is clearly erroneous,

against the preponderance of the evidence, and so clearly contrary to the findings that it is the duty of the reviewing court to correct it. *Krug v. Laughlin,* 208 Neb. 367, 303 N.W.2d 311 (1981); *Lintner v. Roos,* 202 Neb. 476, 276 N.W.2d 93 (1979).

The jury was properly instructed that Mobil was not liable if Spiegel's relationship to Mobil was that of an independent contractor. Generally, control, or the right of control, is the chief criterion in determining whether someone acts as an independent contractor. See *Todd v. Boals,* 187 Neb. 51, 187 N.W.2d 284 (1971). Other factors include the independence the workman enjoys, the degree of supervision of the work, whether tools are provided by the workman or the other party, and the method of payment. See *Meyer v. State Farm Mut. Auto. Ins. Co.,* 192 Neb. 831, 224 N.W.2d 770 (1975).

The evidence clearly supports the jury verdict. Spiegel hired his own employees and paid them from his own account. He withheld taxes from their wages. Billings to and payments from customers were handled by Spiegel. Mobil did not direct Spiegel in the control of the employees. Mobil had a marketing representative who visited Spiegel regularly; however, his directives were considered by Spiegel more advisory than as commands. Spiegel set his own prices and did not feel compelled to use company advertising.

There being no error, the judgments of the District Court are affirmed.

AFFIRMED.

WHITE, J., participating on briefs, concurs in the result.